688 F.2d 10
 34 UCC Rep.Serv. 400
 CREDIT ALLIANCE CORPORATION, a corporation, Appellant,
v.
JEBCO COAL COMPANY, INC., a corporation, and First National
Bank & Trust Co. of Washington, Pennsylvania, a corporation.
 No. 82-5102.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) July 29, 1982.
Decided Aug. 31, 1982.
Rehearing and Rehearing En Banc Denied Sept. 22, 1982.
 
 James L. Weisman, Weisman, Pass & Swartz, Pittsburgh, Pa., for appellant.
 William M. Hoffman, B. A. Karlowitz, Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, Pa., for appellee, First Nat. Bank & Trust Co. of Washington, Pennsylvania.
 Before GIBBONS and HUNTER, Circuit Judges, and POLLAK,* District Judge.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Credit Alliance Corporation (Credit Alliance) appeals from an order of the district court, affirming a decision of the bankruptcy court which held that First National Bank and Trust Company of Washington, Pa. (the Bank) had priority in security in certain property of a debtor, Jebco Coal Company, Inc. (Jebco), over the security interest claimed by Credit Alliance. The bankruptcy court decision was made in an adversary proceeding instituted by Credit Alliance for relief from the stay provided in 11 U.S.C. § 362 (1976).[1] We reverse.
 
 I.
 
 2
 On January 19, 1975 Jebco, as buyer, executed a conditional sales contract with Highway Equipment Co. for a Fiat-Allis loader and a Fiat-Allis tractor. The time sales price totaled $235,207.00 and was payable in thirty-six monthly installments beginning on February 20, 1975. Thus the final installment was due on January 20, 1978. The conditional sales contract provided that interest would be paid "after maturity at the highest lawful contract rate." It also provided:
 
 
 3
 Title to the property is to remain in the Holder until the time balance and any and all other sums owing by the Buyer to Holder or any judgment thereof are fully paid and all the terms, conditions and agreements herein shall have been fulfilled.
 
 
 4
 In any jurisdiction where the Uniform Commercial Code is in effect the Buyer grants to Holder a security interest in any or all property wherever located now or hereafter belonging to Buyer or in which Buyer has any interest and agrees that Holder's security interest created by this agreement secures any and all other obligations owing by Buyer to Holder.
 
 
 5
 Credit Alliance became the holder of the conditional sales contract by assignment, and on January 20, 1975 it filed, in the Office of the Prothonotary of Fayette County, and in the Office of the Secretary of the Commonwealth in Harrisburg, a Pennsylvania Approved Standard Form UCC-I, together with the conditional sales contract.[2] The standard form financing statement contains Box No. 3, labeled "Maturity Date (optional)," which was left blank. Box No. 5 of the form is labeled "This Financing Statement Covers the Following Types (or items) of Property." Box 5 was filled in:
 
 
 6
 All machinery, inventory, equipment and goods as described in attached entire agreement &/or in any Schedule prepared in connection therewith. This UCC form together with the attached Security Agreement &/or Schedule are being submitted for filing herewith as a financing statement.
 
 
 7
 In January of 1977 the Bank made a loan to Jebco, intended in part to pay Jebco's obligation to Credit Alliance. The Bank determined from Credit Alliance the balance due on the conditional sales contract, and Jebco paid that amount by a cashier's check. Although 12A P.S. § 9-404 (Purdon 1970), now 13 Pa.Cons.Stat.Ann. § 9404 (Purdon 1980 Pamph.), provided that Jebco could require from Credit Alliance a termination statement authorizing the filing officer to remove a financing statement from the files, none was requested. Thus when on January 25, 1977 the Bank filed its financing statement, covering collateral for its loan, including the Fiat-Allis loader and tractor, the Credit Alliance financing statement was still of record. In April of 1978 the Bank refinanced the 1977 loan and filed a second financing statement. Again the Credit Alliance financing statement remained of record.
 
 
 8
 On May 10, 1978 Credit Alliance financed Jebco's purchase of a Caterpillar excavator and filed a financing statement for that transaction on May 15. Jebco defaulted on the payments required by the note which it issued for the purchase price of the Caterpillar excavator, and Credit Alliance repossessed it. The excavator was sold, but the sales price left a deficiency of $74,193.47, for which Credit Alliance claims security in the Fiat-Allis loader and tractor and other equipment. In December 1979, after Jebco filed a Chapter 11 petition, Credit Alliance filed a continuation statement with respect to its 1975 financing statement.
 
 
 9
 The parties agreed to sell some of the equipment and deposit the proceeds, $57,470.87, in escrow pending final determination of the conflicting claims of the Bank and Credit Alliance. Two other pieces of equipment, worth approximately $25,000, are also subject to those conflicting claims.
 
 II.
 
 10
 The bankruptcy court and the district court held that the Bank had priority because Credit Alliance's 1975 financing statement was ineffective to secure its May 1978 advance of credit. They concluded that the 1975 financing statement lapsed on March 20, 1978, and thus that the Bank's April 1978 refinancing agreement had priority.
 
 
 11
 The governing statute provides that a filed financing statement with a stated maturity date of five years or less is effective until that date and for sixty days thereafter. Any other financing statement is effective for five years from the date of filing. 12A P.S. § 9-403(2) (Purdon 1970), now 13 Pa.Cons.Stat.Ann. § 9403(b). Thus when the maturity date of the financing statement is not specified it remains perfected for five years. E.g., Heights v. Citizens' National Bank, 463 Pa. 48, 56, 342 A.2d 738, 741 (1975).
 
 
 12
 Both courts concluded that the 1975 financing statement had a maturity date of January 20, 1978, when in accordance with the terms of the conditional sales agreement, the final installment was due. They reasoned, therefore, that the 1975 financing statement became imperfected on March 20, 1978, a few weeks before the Bank's April 1978 refinancing. In this both courts erred. January 20, 1978 may have been the maturity date of the final installment of the conditional sales contract, but it cannot be construed to be the maturity date of the financing statement perfecting the security for that obligation. Otherwise the financing statement would be ineffective sixty days after a default on the final payment of the underlying obligation. Maturity date of the obligation and maturity date of a financing statement are separate matters. Accepting, for present purposes, the propriety of looking beyond the face of the UCC form for the maturity date of the financing statement, it is plain that the conditional sales contract does not contain such a date.[3] The contract by its plain terms creates a security interest securing other obligations of unspecified maturities. The maturity date of the last installment on the contract for the Fiat-Allis loader and tractor has nothing to do with the period during which the financing statement remains effective. The decisions under review are simply category errors.
 
 
 13
 Since, whether we look at the face of UCC-I Form or at the entire 1975 agreement, the maturity date of the financing statement is unspecified, it remained, under the statute, perfected for five years, or until January 20, 1980. It was duly extended by the filing of a continuation statement in December 1979. 12A P.S. § 9-403(3), now 13 Pa.Cons.Stat.Ann. § 9403(c). Thus if the 1975 financing agreement does secure advances by Credit Alliance in 1978, it was perfected at the time of those advances and at all times thereafter. Moreover the statute provides that where two security interests have been perfected by filing, priority in the same collateral is determined in the order of filing, regardless of which security interest is perfected first and whether it attached before or after filing. 12A P.S. § 9-312(5)(a), now 13 Pa.Cons.Stat.Ann. 9312(e)(1).
 
 III.
 
 14
 The precise issue whether a financing statement with respect to a security agreement making no express provision for future advances nevertheless affords security in the original collateral for such advances has not been decided in the Pennsylvania courts. Most courts outside Pennsylvania which have considered the matter have concluded that the first financing statement does so. E.g., James Talcott, Inc. v. Franklin National Bank of Minneapolis, 292 Minn. 277, 194 N.W.2d 775 (1972); Provident Finance Co. v. Beneficial Finance Co., 36 N.C.App. 401, 245 S.E.2d 510 (1978), cert. denied, 295 N.C. 549, 248 S.E.2d 728 (1978); Allis Chalmers Credit Corp. v. Chaney Investment, Inc., 227 Kan. 4, 605 P.2d 525 (1980). There is a conflicting minority line of authorities typified by Coin-O-Matic Service Co. v. Rhode Island Hospital Trust Co., 3 U.C.C.Rep. 1112 (R.I.Super.Ct.1966), holding that if no express provision is made in the initial financing agreement for future advances the first financing statement does not secure such advance. The Coin-O-Matic view has been criticized by leading commentators. Henson, Handbook on Secured Transactions § 5-3 at 132; §§ 5-12, 5-13 at 169-171 (2d ed. 1979); White & Summers, Handbook of the Law Under the Uniform Commercial Code, § 25-4 at 1038-40 (2d ed. 1980). Moreover the Final Report of the Review Committee for Article 9 (1971) at 226-27 expressly disapproved Coin-O-Matic, noting:
 
 
 15
 The Committee disapproves this line of cases, and believes that an appropriate financing statement may perfect security interests securing advances made under agreements not contemplated at the time of the filing of the financing statement, even if the filing of the advances then contemplated have been fully paid in the interim. Under the notice-filing procedure of the Code, the filing of a financing statement is effective to perfect security interest (sic) as to which the other required elements for perfection exist, whether the security agreement involved is one existing at the date of the filing with an after-acquired property clause or a future advance clause, or whether the applicable security agreement is executed later ...
 
 
 16
 The Committee considered drafting a provision emphasizing its disagreement with the Coin-O-Matic line of cases, but concluded that the existing Code is clear enough, and should not be disturbed just to overrule some lower court cases.
 
 
 17
 Although in 1981 the Review Committee considered the Code to be clear enough, in 1972 an amendment to section 312 was proposed as follows:
 
 
 18
 (7) If future advances are made while a security interest is perfected by filing ... the security interest has the same priority for the purposes of subsection (5) with respect to future advances as it does with respect to the first advance ...
 
 
 19
 The new subsection has not been adopted in Pennsylvania. It has been adopted in Rhode Island, however, thus overruling Coin-O-Matic by statute. In re Nason, 13 B.R. 984, 31 U.C.C.Rep. 1739, 1742 (Bkrtcy.D.R.I.1981). We are confident that were the Supreme Court of Pennsylvania to be presented with the question it would agree with the 1971 Final Report of the Review Committee, and hold that so long as a financing statement is perfected it affords security in the designated collateral for future advances.
 
 IV.
 
 20
 The judgment appealed from will be reversed and the case remanded for the entry of a judgment recognizing that Credit Alliance's 1978 advances are secured by virtue of its perfected 1975 financing statement, and have priority over the Bank's claim to the same collateral.
 
 
 
 *
 Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The parties made no contention that the bankruptcy court lacked jurisdiction to adjudicate their adverse claims
 
 
 [2]
 The parties have made no contention that the description in the financing statement of Credit Alliance as assignee of the secured party, Highway Equipment Co., is significant. Therefore we do not address that question
 
 
 [3]
 The Uniform Commercial Code permits the filing of a security agreement as a financing statement. 12A P.S. 9-402(1), now 13 Pa.Cons.Stat.Ann. § 9402(a). Pennsylvania by regulation, however, requires that all filings be accompanied by a financing statement prepared on Form UCC-I even when a security agreement is also filed. 19 Pa.Code § 55.2(b) & (d)