In re HILYARD DRILLING
COMPANY, INC., Debtor.

WORTHEN BANK & TRUST
COMPANY, N.A., Plaintiff,

v.

HILYARD DRILLING COMPANY, INC.
and National Bank of Commerce of El
Dorado, Defendants.

Bankruptcy No. ED 85-10M.
Adv. No. 85-346M.

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Jan. 10, 1986.

See also, Bkrtcy., 58 B.R. 616.

Susan Gunter, Little Rock, Ark., for debtor.

Charles W. Baker, Little Rock, Ark., for plaintiff.

William I. Prewett, El Dorado, Ark., Wm. David Duke, Little Rock, Ark., for defendant.

Isaac A. Scott, Jr., Little Rock, Ark., trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

Hilyard Drilling Company, Inc., (Hilyard) filed a voluntary petition for relief under the provisions of Chapter 11 on the 24th day of January 1985. On April 25, 1979, Hilyard Drilling Co. executed and delivered to National Bank of Commerce of El Dorado (NBC) a security agreement which granted to NBC a security interest in all accounts receivable of Hilyard then existing or thereafter acquired. The debtor was described in these documents as Hilyard Drilling Co. Properly executed financing statements were recorded with the Secretary of State of Arkansas and the Circuit Clerk of Union County, Arkansas, on April 26, 1979. These two filings completed perfection of NBC's lien under state law. Numerous loan transactions were then conducted between the parties and by June 1, 1983, Hilyard was indebted to NBC in an amount slightly in excess of $1,100,000.

On June 14, 1983, Hilyard executed and delivered to Worthen Bank & Trust Company, N.A., (Worthen) a security agreement which granted to Worthen a security interest in all accounts receivable of Hilyard then existing or thereafter acquired. Properly executed financing statements were recorded with the Secretary of State of Arkansas and the Circuit Clerk of Union County, Arkansas, on June 14, 1983, which perfected Worthen's lien as of that date. Thereafter, Worthen and the debtor conducted numerous loan transactions. Worthen was aware of the existence of NBC's prior lien and acknowledged, in a letter to Ray Hilyard written April 23, 1983, that its claim of lien in the accounts receivable was junior to NBC's claim.

Hilyard executed and delivered to NBC another properly executed financing statement which was filed with the Secretary of State of Arkansas and the Circuit Clerk of Union County, Arkansas, on July 8, 1983. This financing statement described the collateral as the same accounts receivable which were previously described in the financing statement filed by NBC on April 26, 1979, and which were described in Worthen's financing statement filed on June 14, 1983. Both NBC and Worthen engaged in numerous loan transactions with the debtor after July 8, 1983.

The issue presented is whether NBC's financing statement dated July 8, 1983, properly continued perfection of its prior financing statement dated April 25, 1979. This issue is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

The bank officer from NBC who was responsible for the Hilyard loan, testified that the bank's practice was to file a new financing statement rather than a continuation statement as described in Ark.Stat. Ann. § 85–9–403 (Cum.Supp.1985). The bank officer's opinion was that when a financing statement expired, the filing of a new financing statement constituted compliance with the Uniform Commercial Code and operated to extend the validity of NBC's lien beyond its original five year life.

Worthen argues that under Arkansas law, NBC's first lien was perfected for five years from April 25, 1979, and lapsed on April 25, 1984, because no continuation statement was filed. Worthen argues that pursuant to Ark.Stat.Ann. § 85–9–312 (Cum.Supp.1985) its lien in the accounts receivable was perfected on June 14, 1983, and that NBC's lien in the same collateral was perfected as of July 8, 1983. Worthen further argues that on the date the bankruptcy petition was filed, its lien was senior to NBC's lien.

NBC argues that while the lien created by the 1979 filing remained perfected, the filing of the financing statement on July 8, 1983, continued its original perfection through the date of the filing of the bankruptcy petition. NBC argues alternatively that because Worthen knew of the existence of NBC's prior lien at the time Worthen filed its financing statement and Worthen acknowledged that its filing created a second lien that Worthen should be estopped from asserting that its lien is now prior. NBC also argues that Worthen's letter to Ray Hilyard dated April 28, 1983, acknowledging its second position constituted an agreement to subordinate, which is enforceable pursuant to Ark.Stat.Ann. § 85–9–316 (1983).

■ The bankruptcy court looks to state law to determine the extent and validity of liens in property of the estate. *Matter of Chaseley's Foods, Inc.*, 726 F.2d 303 (7th Cir.1983); 3 *Collier on Bankruptcy,* ¶ 506.-04[1] (15th ed. 1985).

Ark.Stat.Ann. § 85–9–403 (Cum.Supp. 1985) provides in pertinent part:

(2) Except as provided in subsection (6) a filed financing statement is effective for a period of five [5] years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five [5] year period unless a continuation statement is filed prior to the lapse. If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of sixty [60] days or until expiration of the five-year period, whichever occurs later. Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.

(3) A continuation statement may be filed by the secured party within six [6] months prior to the expiration of the five-year period specified in subsection (2). Any such continuation statement must be signed by the secured party, identify the original statement by file number and state that the original statement is still effective. A continuation statement signed by a person other than the secured party of record must be accompanied by a separate written statement of assignment signed by the secured party of record and complying with subsection (2) of Section 9–405 [§ 85–9–405], including payment of the required fee. Upon timely filing of the continuation statement, the effectiveness of the original statement is continued for five [5] years after the last date to which the filing was effective whereupon it lapses

in the same manner as provided in subsection (2) unless another continuation statement is filed prior to such lapse. Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the original statement. Unless a statute on disposition of public records provides otherwise, the filing officer may remove a lapsed statement from the files and destroy it immediately if he has retained a microfilm or other photographic record, or in other cases after one [1] year after the lapse. The filing officer shall so arrange matters by physical annexation of financing statements to continuation statements or other related filings, or by other means, that if he physically destroys the financing statements of a period more than five ▮ years past, those which have been continued by a continuation statement or which are still effective under subsection (6) shall be retained.

▮ NBC argues that the Court should consider the failure of the document filed on July 8, 1983, to meet all the requirements of Ark.Stat.Ann. § 85-9-403 (Cum. Supp.1985) as "harmless error" as that term is used in Ark.Stat.Ann. § 85-9-402(8) (Cum.Supp.1985). Assuming that the concept of harmless error applies to § 85-9-403 (Cum.Supp.1980), there is no basis in the evidence to find that substantial compliance with § 85-9-403 (Cum.Supp.1985) occurred. Under § 85-9-403 (Cum.Supp. 1985) there are four basic elements for filing a continuation statement: (1) the continuation statement may be filed within six months prior to the expiration date of the original filing; (2) the continuation statement is to be signed by the secured party; (3) the continuation statement must identify the original statement by file number; and (4) the continuation statement must state that the original statement is still effective.

▮ The document which was filed in July 1983, contains the signature of the secured party, NBC, but does not contain any of the other elements necessary for filing a continuation statement. NBC argues that compliance with one of the four requirements is substantial compliance and

would put parties on notice of NBC's claim of a continuous lien. This argument is unpersuasive. Two of the three missing elements of the continuation statement are the elements which distinguish it from a financing statement; both statements serve a different function under the Uniform Commercial Code.

The case of *In re Barnes,* 15 U.C.C.Rep. 956 (D.Me.1974), the only case cited by NBC in support of its argument, is factually distinguishable from these facts. In *Barnes,* a financing statement was mistakenly filed instead of a continuation statement. The financing statement contained a typed statement that asserted that it was filed for "the purpose of continuing the financing statement filed with the Town Clerk 5/1/67." The Court concluded that this typed statement was sufficient notice to alert parties searching the records to refer back to the original filing. The lien in *Barnes* was found to be unperfected on other grounds.

Parties are entitled to rely on the provisions of the Uniform Commercial Code which cause the lapse of the effectiveness of a financing statement and they are entitled to rely on the distinction between a financing statement and a continuation statement. While it is true that such an interpretation of the statute occasionally results in harsh and unintended results, those who would suffer these results are secured parties whose negligence creates the ambiguity in the first instance.

Cases construing § 9-403 of the Uniform Commercial Code as adopted in other jurisdictions generally hold that unless a continuation statement is filed, the lien becomes unperfected after five years. *Eastern Indiana Production Credit Association v. Farmers State Bank,* 31 Ohio App.2d 252, 287 N.E.2d 824 (1972); *In re Radcliff Door Co., Inc.,* 17 B.R. 153 (Bkrtcy.W.D.Ky. 1982); *Matter of Munzenreider Corp.,* 34 B.R. 82 (Bkrtcy.M.D.Fla.1983); *Matter of Super Treads, Inc.,* 7 B.R. 532 (Bkrtcy.M. D.Ga.1980); *Matter of Chaseley's Foods, Inc.,* 726 F.2d at 303; *In re Sewell,* 32 B.R. 116 (Bkrtcy.N.D.Ala.1983); *Credit Alliance Corp. v. Jebco Coal Co., Inc.,* 688 F.2d 10 (3rd Cir.1982).

The priority in conflicting liens in the same collateral is governed by Ark.Stat. Ann. § 85–9–312 (Supp.1985) which provides that the first to perfect is the first in priority. Perfection of a lien in accounts receivable is completed when the financing statement is filed with both the Circuit Clerk of the county where the debtor has its principal place of business and with the Secretary of State. Ark.Stat.Ann. § 85–9–401(1)(c) (Cum.Supp.1985). Worthen's lien in the accounts receivable was, therefore, perfected on June 14, 1983, and NBC's lien on the accounts receivable was perfected on July 8, 1983. The same priorities existed on the date of the filing of the bankruptcy petition. Worthen's lien was perfected prior to NBC's lien.

NBC argues alternatively that it is nevertheless entitled to priority because Worthen agreed to subordinate its lien to the lien claim of NBC.

Ark.Stat.Ann. § 85–9–316 (Add.1961) provides, "nothing in this article prevents subordination by agreement by any person entitled to priority."

Ark.Stat.Ann. § 85–1–201(3) (Cum.Supp. 1985) defines agreement as follows:

> [T]he bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this Act (Sections 1–205 and 2–208 [§§ 85–1–205, 85–2–208]). Whether an agreement has legal consequences is determined by the provisions of this Act, if applicable; otherwise by the law of contracts (Section 1–103 [§ 85–1–103]).

Ark.Stat.Ann. § 85–1–205(1) (Cum.Supp. 1985) provides:

> A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

Ark.Stat.Ann. § 85–1–203 (Add.1961) provides:

> Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement.

■ An agreement to subordinate is valid and does not have to contain all the legal requirements for the formation of a contract. *In re AM Intern., Inc.*, 46 B.R. 566 (Bkrtcy.M.D.Tenn.1985); *Williams v. First National Bank & Trust Co. of Vinita*, 482 P.2d 595 (Okl.1971); *A–W–D, Inc. v. Salkeld*, 175 Ind.App. 443, 372 N.E.2d 486 (1978). An agreement to subordinate may be established through course of dealings between the secured party and the debtor and does not depend upon direct communication to the prior secured party. *Percival Const. Co. v. Miller & Miller Auctioneers, Inc.*, 532 F.2d 166 (10th Cir.1976); *In re AM Intern., Inc.*, 46 B.R. at 566; *In re Thomas Manufacturing Company, Inc.*, 4 U.C.C.Rep. 595 (Bkrtcy.E.D.Pa.1967).

■ The following evidence was presented concerning an agreement by Worthen to subordinate. On April 28, 1983, Paul Watson, Vice President of Worthen, wrote Ray Hilyard a letter which stated in pertinent part as follows:

> Confirming our telephone conversation, our Loan Committee has approved a renewal of your $550,000 equipment line and your $500,000 short-term working capital line on the following conditions:
>
> 1. That Worthen take a second lien position on accounts receivable.
>
> . . . .
>
> I do not think that any of these items present a problem to you since we have previously discussed these. I understand that you need to talk with your bank in El Dorado regarding the receivables. We acknowledge their first lien and would be happy to do so in writing so that it is clear to everyone that our lien is junior to theirs.

On July 6, 1984, Hon. Eugene G. Sayre, attorney for Hilyard Drilling Company, Inc., wrote Steven C. Wade, an officer of Worthen, a letter which stated in pertinent parts as follows:

> The only matter which I want to make absolutely sure is clarified deals with 4.(a) on accounts receivable. Though the Loan Agreement does not reflect it, Hilyard Drilling Company, Inc., has previ-

ously made an assignment of its accounts receivable to the National Bank of Commerce of El Dorado, Arkansas. Thus, if the NBC in El Dorado has filed its financing statement and security agreement, Worthen Bank & Trust Company, N.A., would have a "second" position on these assets. As we have discussed, that was the intention of all parties concerned, as reflected in Paul Watson, Jr.'s letter to Ray Hilyard of April 28, 1983.

Both Ray Hilyard and the bank officers of NBC, testified that their subsequent dealings were all made under the assumption that Worthen's lien was junior in priority. The parties stated that they would not have conducted their business in the manner in which they did had Worthen's lien in fact not been junior.

When Mr. Watson's letter was written, there would have been no purpose in Worthen's agreeing to subordinate because the priorities were already established by law. Worthen was junior to NBC. The only reasonable interpretation of Mr. Watson's letter is that he was expressing his understanding of Worthen's and NBC's priorities as they then were established by law. Nothing in the evidence suggests that Worthen expressed an agreement that it would remain in a junior position if the law provided otherwise. *A–W–D, Inc. v. Salkeld,* 175 Ind.App. at 443, 372 N.E.2d at 486; *Percival Const. Co. v. Miller & Miller Auctioneers, Inc.,* 532 F.2d at 166. The evidence does not sustain a finding that there was an agreement to subordinate.

NBC also argues that the equitable principle of estoppel applies here. This argument has no merit. There was no evidence that Worthen knew that NBC's practices were not in compliance with the Uniform Commercial Code. Furthermore, there was no detrimental reliance by NBC because the witness for NBC testified emphatically that in his opinion the filing of a new financing statement continued the bank's perfected status.

Worthen also argues in its reply brief that no security agreement executed by the debtor, Hilyard Drilling Supply Company, Inc., existed because the security agreement of April 20, 1979, was executed by Hilyard Drilling Company, a partnership. There was no evidence introduced regarding the status of the debtor at the time the documents were executed. This argument is without merit.

The parties both discussed in their briefs and at the trial the issue of marshalling of liens assuming a ruling against NBC. That issue is not properly before the Court at this time since there was no evidence introduced at the trial from which a decision could be made on this point.

For the reasons stated herein, Worthen Bank and Trust Company, N.A., is found to have a first lien on the debtor's accounts receivable and National Bank of Commerce of El Dorado is found to have a second lien.

IT IS SO ORDERED.