In re HILYARD DRILLING CO., INC., Debtor.

WORTHEN BANK & TRUST COMPANY, N.A., Appellee,

v.

NATIONAL BANK OF COMMERCE OF EL DORADO, ARKANSAS, and Hilyard Drilling Co., Inc., Appellants.

No. 86–1056.

United States District Court, W.D. Arkansas, El Dorado Division.

Dec. 15, 1986.

Charles W. Baker and R. Davis Thomas, Jr., Rose Law Firm, Little Rock, Ark., for appellee.

William I. Prewett, Compton, Prewett, Thomas & Hickey, El Dorado, Ark., for appellants.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

This appeal arises from a final Judgment entered by the Bankruptcy Court[1] in favor of Worthen Bank & Trust Company (Worthen), in a core proceeding under 28 U.S.C. § 157(b)(2)(K), and against National Bank of Commerce (NBC) on the issue of the priorities of certain perfected security interests held by the two banks in accounts receivable of the debtor, Hilyard Drilling Company, Inc. (Hilyard). The Bankruptcy Court found that NBC's first lienholder status in the accounts receivable lapsed on April 24, 1984. Further, the Bankruptcy Court found that Worthen's June 18, 1983, perfection in the receivables was superior to NBC's July 8, 1983, perfection in that same collateral. Thus, Worthen was elevated to first lienholder status in regard to the receivables. The Bankruptcy Court also found against NBC on its contentions that Worthen, via written correspondence to Hilyard, had entered an agreement to subordinate its interest to that of NBC, and that NBC was entitled to priority on a reliance theory.

■ This Court is guided in its review of the Bankruptcy Court's findings and conclusions by the clearly erroneous rule. *See* Rule 8013, of the Official Bankruptcy Rules.

On April 25, 1979, NBC and Hilyard entered into a lending agreement which culminated in the execution of a financing statement granting NBC a security interest in Hilyard's accounts receivable. NBC properly perfected its interest by filing in the Union County Circuit Clerk's Office and with the Secretary of State on April 26,

1. The Honorable James G. Mixon, Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

1979. These filings clearly established a first lienholder status in NBC for the receivables at that point. NBC continued to advance funds to Hilyard, with NBC's interest being secured by this April 1979 filing.

In 1983 Hilyard negotiated for extensions of credit from Worthen. As evidence of the consummation of a lending agreement, on June 14, 1983, a financing statement was signed on behalf of Hilyard, granting a second lien in the accounts receivable. This financing statement was properly filed of record, perfecting Worthen's security interest. At that time Worthen openly acknowledged that it held a junior lien to that of NBC.

NBC continued to extend credit to Hilyard based upon the agreement executed on April 26, 1979. On July 8, 1983, Hilyard executed a new financing statement in favor of NBC. This statement was properly filed. Thus, NBC was perfected as of that date. The collateral listed in that financing statement was accounts receivable, the same as in the April 26, 1979, statement. The Court notes that NBC refers to this July 8, 1983, financing statement as a "new financing statement" in its brief.

At the time Hilyard filed its petition for relief under Chapter 11 of the Bankruptcy Code on January 24, 1985, it owed substantial amounts to both NBC and Worthen. In the course of the administration of the bankruptcy matter, the issues now before the Court on appeal arose.

In determining the priority between conflicting security interests in the same collateral, Ark.Stat.Ann. § 85–9–312(5)(a) provides that priority is determined "in the order of filing if both are perfected by filing...." Therefore, on July 8, 1983, NBC occupied a first lienholder status by virtue of the filing on April 26, 1979, and Worthen stood in the second lienholder position. This order of priorities existed up to April 25, 1984.

■ NBC contends that its filing of July 8, 1983, constituted a continuation filing under the Uniform Commercial Code. Thus, NBC contends that it retained its first lien.

The Arkansas law concerning the continuation of a perfected security interest is set out in Ark.Stat.Ann. § 85–9–403 (Supp. 1986), wherein it provides in pertinent part:

(2) Except as provided in subsection (6) a filed financing statement is effective for a period of five (5) years from the date of filing. The effectiveness of the filed financing statement lapses on the expiration of the five (5) year period unless a continuation statement is filed prior to the lapse. * * *

(3) A continuation statement may be filed by the secured party within six (6) months prior to the expiration of the five year period specified in subsection (2). Any such continuation statement must be signed by the secured party, identify the original statement by number and state that the original statement is still effective. * * * Upon timely filing of the continuation statement, the effectiveness of the original statement is continued for five (5) years after the last date to which the filing was effective....

The Bankruptcy Court found that the July 8 statement was not a continuation statement as defined in § 85–9–403(3). The Bankruptcy Court found that a financing statement and a continuation statement are separate documents which cannot be substituted for one another. The Bankruptcy Court found that the filing was deficient in three of the four requirements under that section, i.e., it was not filed within six months of expiration of the April 26, 1979, statement, it did not identify the original statement by number and it did not state that the original statement was still effective. Therefore, under § 85–9–403(2), the April 26, 1979, statement lapsed on April 25, 1984. These findings are not clearly erroneous. Had NBC filed a true continuation statement, it would have remained perfected from April 26, 1979, to the present time.

The Bankruptcy Court received testimony from Mr. James D. Cook, President and Chief Executive Officer of NBC, that NBC did not believe it was required to file a continuation statement in order to extend

the effectiveness of the April 26, 1979, financing statement. (T. 38) Further, upon inquiry of the Bankruptcy Court, Mr. Cook stated that NBC does not "as a general rule" file a continuation statement as a financing statement nears the point of lapsing. (T. 49) Rather, a Form UCC–1 is filed. (T. 49). A UCC–1 is a standard form financing statement. *See,* e.g., Exhibit B. This was the practice employed by NBC here.

Notwithstanding its own admission of having made an improper filing, NBC contends that it has substantially complied with the requirements for a continuation statement. In support of this substantial compliance argument, NBC cites Ark.Stat. Ann. § 85–9–402(8) (Supp.1986). However, substantial compliance under § 85–9–402(8) pertains to the formal requisites of a financing statement, not a continuation statement. Furthermore, even should this provision be applicable to a continuation statement, the errors in the July 8, 1983, statement filed by NBC were not "minor errors". Neither can it be said that the errors were not "seriously misleading." Thus, there was no substantial compliance. As noted above NBC's statement fails significantly to adhere to the requirements for continuation of its priority based upon the April 26, 1979, statement.

■ NBC asserts that the correspondence surrounding Worthen's extension of credit to Hilyard establishes an agreement to subordinate on the part of Worthen. In a letter dated April 28, 1983, to Ray Hilyard, President of Hilyard, from Worthen, it is provided as conditions for renewal of a $550,000 equipment line and $500,000 working capital line of credit the following:

1. That Worthen take a second lien position on accounts receivable.

\* \* \* \* \* \*

I understand that you need to talk to your bank in El Dorado regarding receivables. We acknowledge their first lien and would be happy to do so in writing so that it is clear to everyone that our lien is junior to theirs.

Exhibit Z, Stipulation of Parties.

Other Worthen Inter-Office correspondence is cited by NBC in support of its subordination argument. These exhibits reflect prior to May 4, 1984, Worthen considered its lien to be junior to NBC's lien. However, on May 4, 1984, only nine days after NBC's interest lapsed, Worthen began to assert its then senior position. This finding was made by counsel for Worthen pursuant to a routine investigation of the filing records.

It is clear that Worthen was acknowledging in April of 1983 that at the time it stood only as a second lienholder. This correspondence and other exhibits do not establish an agreement to subordinate. Exhibit Z was prepared prior to Worthen being in a position to assert a superior position over NBC.

Under Ark.Stat.Ann. § 85–9–316 (Add. 1961) the party being subordinated must hold a priority interest. Worthen did not stand superior to NBC at the time of the alleged agreement. The Bankruptcy Court found that there was no evidence that Worthen intended to remain in the junior position if the law provided otherwise. This finding is not clearly erroneous.

Furthermore, NBC was not a party to any of these documents upon which it now relies. Any statements made by Worthen were made within its debtor/creditor relationship with Hilyard. The statements contained therein were not intended for use beyond the confines of Worthen's transaction with Hilyard. Although an agreement to subordinate may be established though a course of dealing between the debtor and the secure party, the evidence does not sustain a finding that there was such an agreement here.

■ NBC further contends that the Bankruptcy Court erred in finding no basis for application of the principle of promissory estoppel. It is well established in Arkansas law that estoppel has four basic elements: (1) the party to be estopped knew the facts; (2) the party to be estopped must have intended that his conduct be acted upon or must have so acted that the party asserting estoppel has a right to believe that the other party so intended; (3)

the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must have reiled on the party's conduct to his detriment. *Linda Elenia Askew Trust v. Hopkins,* 15 Ark. App. 19, 688 S.W.2d 316, 319 (1985); *First State Bank of Crossett v. Phillips,* 13 Ark. App. 157, 681 S.W.2d 408 (1984). The burden is upon the party asserting the estoppel to prove each of these four essential elements by a preponderance of the evidence.

The Bankruptcy Court found there was no evidence that Worthen knew that NBC's practices were not in compliance with the UCC. Furthermore, based upon Mr. Cook's statement that it was his opinion that the filing of the Form UCC-1 financing statement was sufficient to continue its perfection in the accounts, the Bankruptcy Court found no reliance upon Worthen's conduct by NBC. This Court concludes that the Bankruptcy Court's findings are not clearly erroneous on this issue.

Although Worthen knew that NBC and Hilyard maintained a banking relationship and that NBC was secured in Hilyard's accounts receivable in the superior position at the creation of Worthen's right, there is no evidence that Worthen intended for or induced NBC to rely upon any conduct, statement or act on its part in the making of NBC's lending decisions. Worthen exercised what it considered to be sound, independent business judgment in extension of credit to Hilyard. The same can be said about NBC. However, it was the misconstruction of the law which caused NBC's injury, not any act or representation by Worthen.

Furthermore, the Bankruptcy Court found that NBC had not relied upon Worthen's conduct based upon the testimony of Mr. Cook's. This finding is not clearly erroneous. NBC, as noted above, believed that it was in compliance with the UCC filing requirements. NBC's reliance, though not specifically articulated by the Bankruptcy Court, was upon its misconstruction of the filing provisions of the UCC. Had NBC correctly interpreted

§ 85–9–403, it might have filed a proper continuation statement.

Therefore, NBC failed to sustain its burden of proof on each of the essential elements of estoppel. The Bankruptcy Court's findings on this issue are not clearly erroneous.

■ Finally, NBC asserts that it acted in good faith and was without culpable negligence in its misconstruction of the UCC. NBC contends that because it was continuously perfected, though not in the precise manner as required by the UCC, it should be granted relief from the ruling of the Bankruptcy Court. While NBC's plight is unfortunate, the loss of the first lienholder status is attributable to its own internal decision to not file a continuation statement. The Code does not provide for relief as prayed by NBC.

Therefore, this Court can only conclude that the findings of the Bankruptcy Court should be affirmed and the appeal should be dismissed.

A separate judgment shall be entered contemporaneously herewith.