In re HILYARD DRILLING CO., INC., Debtor.

WORTHEN BANK & TRUST COMPANY, N.A., Appellee,

v.

HILYARD DRILLING CO., INC., National Bank of Commerce of El Dorado, Appellants.

No. 87–1045.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1987.

Decided March 1, 1988.

William Duke, Little Rock, Ark., for appellants.

Charles W. Baker, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON, FAGG and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Hilyard Drilling Co., Inc. (Hilyard) filed a Chapter 11 bankruptcy petition on January 25, 1985. At that time, Hilyard had debts outstanding to the National Bank of Commerce of El Dorado (NBC) and Worthen Bank & Trust Co., N.A. (Worthen), both secured by perfected security interests in Hilyard's accounts receivable. NBC appeals from the district court's [1] affirmance of the bankruptcy court's [2] judgment that Worthen had a first-priority security interest in Hilyard's accounts receivable under Arkansas law. We affirm.

**I**

On April 25, 1979, Hilyard granted NBC a security interest in all of its existing and future accounts receivable, and the proceeds thereof. This security interest was perfected by the filing of appropriate financing statements on April 26, 1979.

On April 28, 1983, Paul C. Watson, Jr., Worthen's vice president, wrote a letter to Hilyard, which stated in relevant part:

> Confirming our telephone conversation, our Loan Committee has approved a renewal of your $550,000 equipment line and your $500,000 short-term working capital line on the following conditions:
>
> 1. That Worthen take a second lien position on accounts receivable.
>
> \*  \*  \*  \*  \*  \*
>
> I do not think that any of these items present a problem to you since we have previously discussed these. I understand that you need to talk with [NBC] regarding the receivables. We acknowledge their first lien and would be happy to do so in writing so that it is clear to everyone that our lien is junior to theirs.

NBC never requested a written acknowledgement. On June 14, 1983, Hilyard granted Worthen a security interest in the same accounts receivable. Neither Worthen's loan documents nor the financing statements it filed on June 14, 1983, stated that Worthen's security interest was subordinate to NBC's security interest.

On July 8, 1983, in connection with the reworking of Hilyard's loans, NBC filed a new financing statement giving notice of its security interest in Hilyard's accounts receivable. NBC did not file a continuation statement within six months preceding April 25, 1984, the expiration date of its 1979 financing statement, as required by Ark.Stat.Ann. § 85–9–403(3).[3]

On July 6, 1984, Eugene G. Sayre, Hilyard's attorney, wrote a letter to Steven C. Wade, a commercial loan officer at Worthen, which stated in relevant part:

> The only matter which I want to make absolutely sure is clarified deals with 4.(a) on accounts receivable. Though the Loan Agreement does not reflect it, Hil-

---

1. The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas.

2. The Honorable James G. Mixon, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

3. All statutory references are to the 1947 Arkansas Statutes as amended and in effect on the dates relevant to this opinion. Title 85 of the 1947 Arkansas Statutes was recodified as part of Title 4 of the Arkansas Code of 1987 Annotated, which became effective on January 1, 1988.

yard Drilling Company, Inc., has previously made an assignment of its accounts receivable to the National Bank of Commerce of El Dorado, Arkansas. Thus, if the NBC in El Dorado has filed its financing statement and security agreement, Worthen Bank & Trust Company, N.A., would have a "second" position on these assets. As we have discussed, that was the intention of all parties concerned, as reflected in Paul Watson, Jr.'s letter to Ray Hilyard of April 28, 1983.

The schedule of assets filed in connection with Hilyard's Chapter 11 bankruptcy indicated that the debts to NBC and Worthen exceeded Hilyard's accounts receivable. Worthen filed a motion with the bankruptcy court for the determination of the priority of the security interests in Hilyard's accounts receivable. The bankruptcy court determined that Worthen's security interest was first in priority. *In re Hilyard Drilling Co.*, 60 B.R. 500, 505 (Bankr.W.D. Ark.1986). On appeal, the district court affirmed the findings of the bankruptcy court. *In re Hilyard Drilling Co.*, 74 B.R. 125, 129 (W.D.Ark.1986).

■ We review the findings of the bankruptcy court under the clearly erroneous standard, *Hanson v. First Bank*, 828 F.2d 1310, 1312 (8th Cir.1987); Bankr.R. 8013, under which we must accept the bankruptcy court's findings unless we are left with a " 'definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

## II

■ The effectiveness of a financing statement lapses five years from the date of filing, unless a continuation statement is filed prior to its lapse. Ark.Stat.Ann. § 85–9–403(2) (Supp.1985).[4] Thus, unless NBC filed a continuation statement, its April 26, 1979, financing statement lapsed on April 25, 1984, prior to the filing of Hilyard's bankruptcy petition. NBC argues that its July 8, 1983, financing statement should be treated as a continuation statement under Ark.Stat.Ann. § 85–9–403(3). We disagree.

■ Under Ark.Stat.Ann. § 85–9–403(3) (Supp.1985), a continuation statement must be filed within six months prior to the expiration of the original filing and "must be signed by the secured party, identify the original statement by file number and state that the original statement is still effective."

NBC admits that its July 8, 1983, financing statement does not satisfy the specific statutory requirements for a continuation statement because it "was not filed within six months of the expiration of the original financing statement, it does not refer to the file number of that financing statement, and it does not state that the original financing statement is still effective." Appellant's Brief at 41. NBC nonetheless argues that its July 8, 1983, financing statement should be treated as a continuation statement because its failure to fulfill the requirements of Ark.Stat.Ann. § 85–9–403(3) is "harmless error," comparable to that addressed in Ark.Stat.Ann. § 85–9–402(8).[5]

Without determining whether the harmless error concept applies to Ark.Stat.Ann. § 85–9–403(3),[6] the bankruptcy court found

---

**4.** Applicable state law determines the extent and validity of liens on property in the bankruptcy estate. *In re Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir.1983); 3 *Collier on Bankruptcy*, ¶ 506.04[1] (15th ed. 1987).

**5.** Under Ark.Stat.Ann. § 85–9–402(8) (Supp. 1985), "[a] financing statement substantially complying with the requirements of [§ 85–9–402] is effective even though it contains minor errors which are not seriously misleading."

**6.** The district court determined that "substantial compliance under § 85–9–402(8) pertains to the formal requisites of a financing statement, not a continuation statement." *In re Hilyard Drilling Co.*, 74 B.R. at 128. Because we have determined that NBC did not substantially comply with the requirements of Ark.Stat.Ann. § 85–9–403(3), it is unnecessary for us to address this issue.

that NBC's July 8, 1983, financing statement did not substantially comply with the requirements for a continuation statement. *In re Hilyard Drilling Co.,* 60 B.R. at 503. This finding is not clearly erroneous.

Financing statements and continuation statements serve distinct and different purposes. *In re Hays,* 47 B.R. 546, 549 (Bankr.N.D.Ohio 1985). A financing statement that does not refer to the original filing cannot suffice as a continuation statement. *Bostwick–Braun Co. v. Owens,* 634 F.Supp. 839, 841 (E.D.Wis.1986); *E. Ind. Prod. Credit Ass'n v. Farmers State Bank,* 31 Ohio App.2d 252, 287 N.E. 2d 824, 826 (1972). *Compare In re Barnes,* 15 U.C.C.Rep.Serv. 956, 962 (D.Me. 1974) (financing statement that specifically stated it was for "the purpose of continuing the Financing Statement filed with Town Clerk 5/1/67" provided the necessary linkage to original financing statement). NBC's failure to file a continuation statement cannot be considered harmless error, because the second financing statement gave no indication that it was filed for the purpose of continuing any other financing statement.

■ In addition, the fact that Worthen was aware of NBC's once-perfected security interest does not render harmless NBC's failure to file a proper continuation statement. "[S]ince the purpose of statutory filing requirements is, in most instances, to resolve notice disputes consistently and predictably by reference to constructive or statutory notice alone * * * consideration of a junior creditor's actual notice of a now lapsed prior filing by a competing senior creditor" is precluded. *Bostwick–Braun Co.,* 634 F.Supp. at 841; *accord Frank v. James Talcott, Inc.,* 692 F.2d 734, 739 (11th Cir.1982).

### III

NBC argues that even if its July 8, 1983, financing statement is not considered a continuation statement, its security interest is first in priority because it was continuously perfected from April 26, 1979, pursuant to Ark.Stat.Ann. §§ 85–9–303(2) and 85–9–312(5)(a).

■ Ark.Stat.Ann. § 85–9–303(2) (1961) provides:

(2) If a security interest is originally perfected in any way permitted under this Article [chapter] and is subsequently perfected in some other way under this Article [chapter], without an intermediate period when it was unperfected, the security interest shall be deemed to be perfected continuously for the purposes of this Article [chapter].

To interpret Ark.Stat.Ann. § 85–9–303(2) as providing that a security interest can be continuously perfected by consecutively filed financing statements contradicts the express language of Ark.Stat.Ann. § 85–9–403(2).[7] Ark.Stat.Ann. § 85–9–303(2) is applicable to security interests that are originally perfected in one way and then subsequently perfected in some other way, without an intermediate unperfected period. NBC, which initially perfected by filing, subsequently perfected in the same way, by filing, as opposed to "in some other way" as required by the statute. Accordingly, Ark.Stat.Ann. § 85–9–303(2) is inapplicable to NBC's security interest in Hilyard's accounts receivable.

■ Ark.Stat.Ann. § 85–9–312(5)(a) (Supp.1985) states:

Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

Worthen's security interest had first priority pursuant to Ark.Stat.Ann. § 85–9–312(5)(a). NBC's April 26, 1979, financing statement lapsed due to its failure to file a continuation statement, leaving the

---

**7.** Ark.Stat.Ann. § 85–9–403(2) (Supp.1985) states in relevant part: "The effectiveness of a filed financing statement lapses on the expiration of the five [5] year period [from the date of filing] unless a continuation statement is filed prior to the lapse."

underlying security interest unperfected. Ark.Stat.Ann. § 85–9–403(2) (Supp.1985). Following the lapse, the other perfected security interests in Hilyard's accounts receivable advanced in priority. *Sec. Nat'l Bank and Trust Co. v. Dentsply Professional Plan,* 617 P.2d 1340, 1343 (Okl. 1980). Of the remaining perfected security interests, Worthen's interest had priority because it was first in time of filing or perfection.

## IV

Alternatively, NBC contends that Watson's letter to Hilyard constituted a subordination agreement under Ark.Stat. Ann. § 85–9–316 (1961), which states as follows:

Priority subject to subordination.— Nothing in this Article [chapter] prevents subordination by agreement by any person entitled to priority.

In concluding that Watson's letter did not constitute a subordination agreement, the bankruptcy court reasoned as follows:

When Mr. Watson's letter was written, there would have been no purpose in Worthen's agreeing to subordinate because the priorities were already established by law. Worthen was junior to NBC. The only reasonable interpretation of Mr. Watson's letter is that he was expressing his understanding of Worthen's and NBC's priorities as they then were established by law. Nothing in the evidence suggests that Worthen expressed an agreement that it would remain in a junior position if the law provided otherwise. The evidence does not sustain a finding that there was an agreement to subordinate.

*In re Hilyard Drilling Co.,* 60 B.R. at 505 (citations omitted).

NBC argues that the bankruptcy court's finding is clearly erroneous because the purpose of Watson's letter was to induce Hilyard to grant Worthen a second-priority security interest in Hilyard's accounts receivable as well as to clarify the priority of the interests. We disagree. Because NBC's first-priority security interest was already established by law at the time of Watson's letter, it was not clearly erroneous for the bankruptcy court to discount the significance of any evidence to the effect that Worthen would not have been granted a security interest absent a subordination agreement.[8] We conclude, as did the district court,[9] that the bankruptcy court's finding that Watson's letter did not constitute a subordination agreement is not clearly erroneous.[10]

Alternatively, NBC argues that the bankruptcy court's finding is based on an erroneous interpretation of Ark.Stat.Ann. § 85–9–316. Specifically, NBC contends that the bankruptcy court construed the law to provide that subordination agreements can be entered into only by a party entitled to priority at the time of the agreement. Although it is not clear that the bankruptcy court was guided by the asserted interpretation, the statute provides that a subordination agreement must be "by any person entitled to priority." Ark.Stat. Ann. § 85–9–316 (1961). *Compare A–W–D, Inc. v. Salkeld,* 175 Ind.App. 443, 372 N.E.2d 486, 488 (1978); Coogan, Kripke and Weiss, *The Outer Fringes of Article 9: Subordination Agreements, Security Interests in Money and Deposits, Negative Pledge Causes, and Participation Agreements,* 79 Harv.L.Rev. 229, 259–60 (1965) (in a subordination agreement, a secured party agrees to subordinate his position to

---

**8.** The clearly erroneous standard "is also applicable when the court does not enunciate its findings as such because its opinion nonetheless was based upon explicit determinations." *Hanson,* 828 F.2d at 1312 n. 3.

**9.** In addition, the district court found that "[a]ny statements made by Worthen were made within its debtor/creditor relationship with Hilyard * * * [and] were not intended for use beyond the confines of Worthen's transaction with Hilyard." *In re Hilyard Drilling Co.,* 74

B.R. at 128. Because we affirm the bankruptcy court's finding that Watson's letter did not constitute a subordination agreement, it is unnecessary for us to address this issue.

**10.** In light of the conflicting testimony, the issue of whether a subordination agreement existed is a question of fact. *W. Auto Supply Co. v. Bank of Imboden,* 17 Ark.App. 4, 701 S.W.2d 394, 395 (1986).

one which would otherwise be junior). It is undisputed that Worthen was not entitled to priority at the time of Watson's letter.

## V

■ Finally, NBC argues that the doctrine of promissory estoppel precluded Worthen from claiming a first-priority security interest in Hilyard's accounts receivable. We disagree.

Under Arkansas law, a party asserting the doctrine of promissory estoppel must establish: (1) the making of a promise, (2) intent by the promisor that the promise be relied upon, (3) reliance upon the promise by the promisee, and (4) injustice resulting from a refusal to enforce the promise. *Peoples Nat. Bank v. Linebarger Const. Co.*, 219 Ark. 11, 240 S.W.2d 12, 16 (1951); *Ralston Purina Co. v. McCollum*, 271 Ark. 840, 611 S.W.2d 201, 203 (App.1981). The bankruptcy court refused to apply the doctrine because it found no detrimental reliance by NBC.

NBC argues that Worthen's asserted promise that its security interest would be subordinate to NBC's was relied upon in two respects. First, NBC contends that Worthen would not have been granted a security interest in Hilyard's accounts receivable absent such a promise. As discussed above, however, it was not clearly erroneous for the bankruptcy court to discount the significance of any evidence presented to this effect.

Second, NBC argues that it relied upon Worthen's asserted promise in filing the new financing statement on July 8, 1983. In this regard, the bankruptcy court correctly concluded that there had been no detrimental reliance by NBC. Cook, the responsible NBC officer, testified that it was his opinion that the filing of a new financing statement was sufficient to continue NBC's successive perfection in Hilyard's accounts receivable. Therefore, NBC's failure to properly file a continuation statement was caused by Cook's misunderstanding of the applicable law and

not by reliance on Hilyard's asserted promise.[11]

The district court's order is affirmed.

---

**11.** NBC also argues that the district court erroneously applied the elements of equitable estoppel to its promissory estoppel claim. Because reliance is an element of both, our result would be the same under either theory.