Leona W. FOLKERS, Myrna K.
Folkers, and H.W.G. Folkers,
Appellants,

v.

Terry BRITT, Diane Britt, Don Britt,
Velma Britt, and Citizens State
Bank, Appellees.

No. 88–1832.

Supreme Court of Iowa.

June 20, 1990.

Rehearing Denied July 20, 1990.

David F. McGuire, Cedar Rapids, for appellants.

Jay A. Willems of Remley, Heiserman & Willems, Anamosa, for appellees.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Leona and Myrna Folkers entered into a stock share lease agreement on certain farm land with Terry and Diane Britt on November 10, 1979. H.W.G. Folkers acted as agent for this transaction. The lease agreement provided that the Britts were to own all farm machinery outright and to purchase an undivided fifty percent interest in the livestock, other than bulls and boars, and in feed and grain. The other undivided fifty percent interest in these items was retained by the Folkers.

In order to help the Britts meet the ownership conditions of the lease, H.W.G. Folkers loaned the Britts $25,276.33, which the Britts then used to purchase the farm machinery and undivided interests in the stock, feed, and grain. The note was dated December 1, 1979, and a security interest in the property was perfected by filing with the secretary of state on December 28, 1979. The Monticello State Bank helped the Folkers make arrangements relative to the loan and perfection of the security interest.

Early in 1980, the Citizens State Bank began extending credit to the Britts, who used their property interest in the livestock and farm machinery as security. The bank perfected its security interest in these notes by filing a blanket financing statement containing an after-acquired property clause on March 13, 1980. At the time of this filing, the bank's interests were clearly junior to those of the Folkers.

The Folkers, however, failed to file a continuation of their financing statement, which lapsed on December 28, 1984, pursuant to the terms of Iowa Code section 554.-9403(2) and (3) (1983). At that time, the bank still had a valid financing statement on file, and timely renewed it by filing a continuation with the secretary of state. By early 1987, the Britts were unable to continue farming, and their interests in the farm machinery, livestock, and feed and grain were auctioned in April of that year. The proceeds were placed in an escrow account in the Merchants National Bank, pending the outcome of this action, which the Folkers filed on December 12, 1986.

In addition to asking for judgment against the Britts, the Folkers asked the court to determine whether they or the bank had priority with respect to the collateral pledged as security for the various loans. Although they admitted that their perfected security interest had lapsed, they claimed that Citizens State Bank failed to "comply with the standards of due care under the circumstances," in perfecting its security interest. The Folkers also joined Monticello State Bank, alleging negligence for its failure to inform the Folkers of the renewal requirement of section 554.9403(2). This latter suit was separated for trial pending the outcome of the current action.

At the time of trial, the district court allowed the Folkers to amend their pleadings to assert the defenses of waiver and estoppel against the bank's claim of priority. The trial court ruled in favor of the Folkers in their action for judgment against the Britts, but found that the debt was unsecured because of the failure to file a continuation statement. It awarded priority in the proceeds from the April 1987 sale to the bank. As a result, there were not enough funds in the account to satisfy the Folkers' judgment. The Folkers appealed only this portion of the trial court's ruling.

The court of appeals reversed the decision of the trial court, holding that the bank had subordinated its lien on the livestock to that of the Folkers by notations on

the original notes indicating the superior interest of the Folkers. *See* Iowa Code § 554.9316. The case is before us on further review from the court of appeals. The action was tried in equity, and accordingly our standard of review is de novo. We affirm the decision of the court of appeals in part and vacate in part. We affirm the judgment of the district court in part, reverse in part, and remand with instructions.

## I. *Subordination.*

The Folkers admit that their security interest was not properly perfected once it lapsed due to their failure to file a continuation notice with the secretary of state on or before December 28, 1984. They concede that under normal circumstances their interest would be subordinated to that of the bank because of the failure. *Cf. State Savs. Bank v. Onawa State Bank*, 368 N.W.2d 161, 166 (Iowa 1985). They argue, however, that the initial loan agreements between the bank and the Britts contain clauses subordinating the bank's interest in the livestock to that of the Folkers.

They point first to the loan agreement between the Britts and the bank dated February 18, 1983. The security agreement provided that the bank would take a security interest in the farm machinery and in the livestock. A parenthetical notation on the loan stated, "Livestock subject to prior lien by Land–Lord [sic], HWG Folkerts [sic]." Similar language was contained in a security agreement dated March 26, 1984. At the time the bank extended both loans, the Folkers had a valid financing statement on file with the secretary of state.

The Folkers contend that these clauses, inserted into the security agreement between the Britts and the bank, are "subordination clauses" undertaken pursuant to Iowa Code section 554.9316, which states, "Nothing in this article prevents subordination by agreement by any person entitled to priority." The Folkers conclude that they are third-party beneficiaries of the contract language.

### A. *Was the Issue Properly Raised Before the Trial Court?*

Before dealing with the merits of this argument, however, we must first determine whether the issue was properly raised before the trial court. The bank contends that the issue was not raised as an affirmative defense in the Folkers' petition, and was not subsequently raised when the Folkers were allowed to include the defenses of equitable estoppel and waiver on the day of trial. Generally, an issue should not be considered on appeal in a civil proceeding unless fairly raised by the pleadings. *City of Clinton v. Loeffelholz*, 448 N.W.2d 308, 310 (Iowa 1989).

■ It is not necessary to determine whether the issue was correctly raised by the pleadings, however, since it is apparent from the record that the parties tried the issue. Where the parties to an action proceed to try an issue not raised by the pleadings, it is generally deemed to have been properly raised and is included in the case. *Id.* at 310.

The trial court found that the notations on the security agreements between the bank and the Britts were simply a means of noting "what the preparer of the document, Citizens State Bank, understood to be the situation at that point in time when the document was signed." Implicit in this factual finding is a determination that the parenthetical notations were not in fact subordination clauses.

### B. *The Trial Court Correctly Decided the Issue in the Bank's Favor.*

Central to the Folkers' contention is the proposition that the parenthetical clauses were a part of the contract between the bank and the Britts. If so, the Folkers argue, they are third-party beneficiaries of the clauses, which subordinated the bank's interests to those of the Folkers. As we have already stated, the trial court found that the clauses were mere notations indicating the state of affairs at the time the security agreements were executed.

■ The threshold question presented by the Folkers' argument is whether notations

on security agreements recognizing a valid perfected security interest in a third party at the time the security agreement is executed may be construed as subordination clauses once the third party's perfected security interest has lapsed. Should this threshold question be answered affirmatively, the court must analyze the documents to determine whether there is valid consideration for the subordination clause and whether the third-party creditor is an intended beneficiary of the contract between the first creditor and the debtor. If the third party is merely an incidental beneficiary, no rights would accrue under the contract. *See Restatement (Second) of Contracts* §§ 302, 315 (1979).

The federal court of appeals for the eighth circuit recently confronted a nearly identical situation. *See In re Hilyard Drilling Co.,* 840 F.2d 596 (8th Cir.1988). In *Hilyard,* two banks petitioned the bankruptcy court to determine the priority of their security interests in the same collateral. The first bank had perfected its interest by filing in 1979. Subsequently, a second bank perfected its interest in the same collateral. The first bank's interest lapsed when it failed to file a proper continuation notice under the Uniform Commercial Code. The first bank had mistakenly filed a new financing statement upon expiration of the first. *Id.* at 598–600.

The bankruptcy court concluded that the new financing statement could not be construed as a continuation, and that the second bank became the priority creditor as a result. *Id.* at 600–01. The first bank then advanced an argument very similar to that adopted by the Folkers in this case. At the time the second bank extended credit to the debtor, a letter written by an officer of the second bank to the debtor acknowledged the first bank's prior interest. When the letter was written, the first bank had a properly perfected security interest in the collateral. The first bank contended that this letter was in fact a subordination agreement. *Id.* at 601.

The eighth circuit quoted with approval the bankruptcy court's finding that there would have been no purpose for the second bank to agree to subordinate at the time the letter was written, since the first bank already held the senior interest. *Id.* Although the language that the Folkers focus on in this case is contained in the security agreement itself, rather than in a letter, the reasoning is applicable.

■ Furthermore, the bank was in no position to make a valid subordination agreement under section 554.9316 at the time it extended credit to the Britts. The 1972 official comment to Uniform Commercial Code section 9–316, which is identical to Iowa Code section 554.9316 states in relevant part:

> This section is inserted to make it entirely clear that a person entitled to priority may effectively agree to subordinate his claim. Only the person entitled to priority may make such an agreement.

This comment makes it clear that only a person entitled to priority may make a subordination agreement. The point is an important one, since the bank was not entitled to priority in relation to the Folkers at the time it entered into security agreements with the Britts, and was consequently in no position to make a subordination agreement in favor of the Folkers. This fact, and the fact that such an agreement could have served no purpose unless the Folkers' interest lapsed, lead to the conclusion that the trial court correctly ruled that the language in dispute was simply a notation reflecting the facts as they stood at the time the agreement was made.

II. *Waiver.*

■ The Folkers also contend that the clauses noting their prior security interests found in the security agreements between the bank and the Britts constitute a waiver of the bank's rights. In order for one party to show that a second party has waived his or her rights, there must be a showing that a right existed in the second party, that the second party knew of that right, and that the second party intended to give up that right. *In re Guardianship of Collins,* 327 N.W.2d 230, 234 (Iowa 1982).

Waiver can be express or implied, and no consideration is required. *Id.*

At the time the bank made notations on the security agreements, it did not have a priority right to the collateral. Since it did not have such a right, it could neither have known of the existence of that right nor have intended to give it up. The bank only succeeded to its priority interests in the collateral upon the Folkers' failure to file a proper continuation statement. The trial court was correct in determining that the clauses in the two agreements between the bank and the Britts were merely notations reflecting the state of the interests at the time the agreements were signed.

### III. *Equitable Estoppel.*

The Folkers also argue that the principles of equitable estoppel prevent the bank from exercising its priority. In support of this proposition they cite Iowa Code section 554.1103, which states:

> Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

Iowa Code § 554.1103 (1985).

■ In order to prove equitable estoppel is applicable to a given situation, a party is required to show: (1) that the defendant has misrepresented or concealed material facts, (2) that the party seeking application of the principle lacked knowledge of the true facts, (3) that the defendant intended the party to act on the basis of the misrepresentation or concealment, and (4) that the party relied upon the misrepresentations or concealment to his or her prejudice or injury. *See Fernandez v. Iowa Dep't of Human Servs.*, 375 N.W.2d 701, 708 (Iowa 1985). Absent evidence proving any of these elements, the doctrine of equitable estoppel is not applicable. *Khabbaz v. Swartz*, 319 N.W.2d 279, 286 (Iowa 1982).

■ The trial court was correct in concluding that the Folkers failed to prove the facts necessary to establish estoppel. Our de novo review convinces us that they made no showing that the bank engaged in misrepresentation or concealment, that they lacked knowledge of the true facts, or that they relied upon any action of the bank in failing to renew their financing statement by properly filing a continuation notice.

### IV. *The Trial Court Correctly Allowed the Bank Interest from the Date of Sale.*

■ The Folkers also object to the trial court's division of the funds placed in the escrow account at the time of sale. The parties agreed to place funds generated by the sale of the Britts' property into the escrow account pending the district court's determination of whether the Folkers or the bank held the priority interest in the proceeds. The auction held on April 11, 1987, generated $46,353.63. In addition to this sum, funds generated by the sale of some of the livestock prior to the auction were placed in the escrow account. The total sum placed in the escrow account amounted to $53,590.78. By the time of trial, the funds on hand in this account had grown to $56,800.

The trial court found, and we concur, that at the time of the sale, the Britts owed the bank $43,902.50. By July 31, 1988, the total amount owing to the bank was $51,-859.43. The trial court awarded this sum to the bank from the escrow account, plus interest at the rate of the notes the Britts had executed, leaving approximately $5000 to satisfy a portion of the Folkers' judgment against the Britts. The Folkers argue that this division was inequitable, because if the funds had been divided on the day of sale, substantially more money would have been on hand to satisfy a portion of the Britts' debt to them. The problem results from the simple fact that the loan made by the bank to the Britts accrued interest at a much higher rate than was paid on the funds in the escrow account.

The Folkers overlook one central fact, however, in that until judgment was entered against the Britts, the proceeds of the sale of farm machinery, livestock, and other farm supplies were in possession of the Britts. Accordingly, the trial court ruled correctly in determining that interest on the debt the Britts owed the bank continued to accrue at the contracted rate until the entry of judgment. *See* Iowa Code §§ 535.3 & 625.21 (1987); *see also In re Monroe County Hous. Corp.*, 29 B.R. 686, 688 (Bankr.Fla.1983) (awarding prejudgment and postjudgment interest on escrow account to priority creditor).

### V. *Income from the Sale of Four Cows.*

The Folkers also contend that some livestock that they owned outright was sold at the auction and in the days leading up to the sale. They argue that they had separately purchased thirteen cows, and that only nine of these cows were returned prior to the auction. They argue that four of the cows sold at auction were their property, and that the proceeds from sale of these four cows now in the escrow account should properly be returned to them. The record shows, however, that the evidence on this point was conflicting. While our review here is de novo, and we are not bound by the trial court's assessment of the credibility of the testimony, we are inclined to give weight to the trial court's implicit finding that the testimony indicating that all the cows owned individually by the Folkers were returned. *See Taylor v. State*, 352 N.W.2d 683, 687 (Iowa 1984); *Recker v. Gustafson*, 279 N.W.2d 744, 748 (Iowa 1979).

### VI. *Income from the Sale of Hogs.*

Some days prior to the auction, jointly held hogs were marketed and the proceeds, in the amount of $4,262.27, were placed in the escrow account. The Folkers contend and the bank concedes that the fifty percent share of these proceeds that belonged to the Folkers outright should not have been placed in the account. The trial court erred in failing to award the Folkers their portion of the proceeds. On this issue, the case is remanded and the court instructed to enter judgment in favor of the Folkers for $2,131.14 plus interest that has accrued in the escrow account since the date of sale. This award shall be made prior to the division of proceeds remaining in the escrow account between the bank and the Folkers. The bank had a prior security interest in the proceeds remaining in the account, to the extent of $51,859.43 plus interest at the rate stated in the promissory notes executed by the Britts from July 31, 1988. The decision of the trial court is affirmed in part, reversed in part, and remanded with instructions.

DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.