**L & L BUILDERS CO., an Iowa corporation, Plaintiff,**

v.

**MAYER ASSOCIATED SERVICES, INC., and Cummins South, Inc., Defendants.**

**No. C 97–4034–MWB.**

United States District Court, N.D. Iowa, Western Division.

April 5, 1999.

</div>

Maurice B. Nieland, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, IA, George F. Madsen, Marks, Madsen & Hirschbach, Sioux City, IA, for plaintiff.

Christopher L. Bruns, Elderkin & Pirkin, P.L.C., Cedar Rapids, IA, Jay Frank Castle, Holt, Ney, Zatcoff & Wasserman, LLP, Atlanta, GA, for defendants.

## MEMORANDUM OPINION AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION .............. 877
   A. Factual Background ........ 877
   B. Procedural Background ..... 878
II. LEGAL ANALYSIS ............ 880
   A. Standards For Summary Judgment ................... 880
   B. Which State's Law Applies? ....................... 881
     1. The appropriate test ..... 881
     2. Application of the test ... 882
   C. Cummins South's Coverage Under The Surety Bond ..................... 883
     1. Rules of contract construction and interpretation ................. 884
     2. Ambiguity ............. 886
     3. Consideration .......... 887
   D. Estoppel ................... 888
     1. Elements of equitable estoppel ................ 888
     2. Genuine issues of material fact ............. 889
   E. Waiver .................... 891
III. CONCLUSION ................ 892

Anyone who is foolish enough to think that life is fair should consider the plight of the parties in this litigation. The plaintiff general contractor asserts that it's just not fair that it should be called upon to pay a materialman for certain equipment, when it has already paid a subcontractor once for that same equipment, and before doing so, received what it took to be assurances that the materialman had already been paid. The materialman counters that it's just not fair that it has never been paid in full by anyone for the equipment it supplied to the subcontractor, even though it received what it took to be assurances that it would have coverage under the general contractor's surety bond before shipping the equipment to the subcontractor. The materialman and general contractor seem to agree that it's not fair that the subcontractor received payment specifically earmarked for the equipment in question, but the money was never passed on to the materialman. However, these disappointed parties disagree on who should now bear the cost of the subcontractor's defalcation, and they present that question to the court on cross-motions for summary judgment.

## I. INTRODUCTION

### A. Factual Background

Although this matter is before the court on cross-motions for summary judgment, the court will not attempt here an exhaustive recitation of undisputed and disputed facts. Rather, the court will provide here

only a survey of the facts and factual disputes necessary to frame the discussion to follow. In its legal analysis, the court will, where necessary, consider which pertinent facts are undisputed and which are genuinely in dispute.

Plaintiff L & L Builders Company was the general contractor for a construction project on land owned by the Winnebago Tribe near Sloan, Iowa. The project was known as the Winnavegas Casino Expansion, Phase I Bingo Hall. Defendant Mayer Associated Services, Inc., was a subcontractor for that project, employed to perform electrical work and to install certain equipment, including a diesel generator. Defendant Cummins South, Inc., was a materialman that supplied the diesel generator and an automatic transfer switch to Mayer for installation on the project.

Cummins South contends that it only agreed to provide Mayer with the diesel generator and automatic transfer switch without payment in advance after receiving assurances that it was covered by L & L's payment and performance bond for the project. When Mayer sought payment from L & L to cover its payment to Cum-

mins South, Mayer agreed to provide L & L with a lien waiver from Cummins South as soon as Mayer received payment from L & L. L & L contends that it is the custom and practice in the industry to give lien waivers only after payment is received, and that it relied upon this custom and practice in making payment to Mayer. Therefore, on January 14, 1997, L & L sent Mayer a check for $197,406, which was to cover payment due Cummins South. It was L & L's understanding of the agreement with Mayer that if L & L did not receive a lien waiver from Cummins South by the next day, it would stop payment on the check. L & L then received by facsimile a lien waiver from Cummins South dated January 15, 1997. However, Mayer apparently deposited the funds from L & L, and has never paid Cummins South in full. Cummins South subsequently filed an "Affidavit of Non–Payment," and demanded payment from United Fire & Casualty Company, L & L's surety for the construction project. United Fire in turn made demand on L & L for exoneration.

The following chart may be of assistance in understanding the facts just described:

### B. Procedural Background

Two separate lawsuits have their genesis in the question of who should pay Cummins South the outstanding amount due

for the equipment it supplied to Mayer. On April 7, 1997, Cummins South brought an action in the Iowa District Court for Linn County against Mayer and United

Fire seeking payment either from Mayer or against the bond for the project. Cummins South did not name L & L in its lawsuit. Approximately two weeks later, on April 18, 1997, L & L brought the present action against Mayer and Cummins South in this federal court for interpleader and declaratory judgment. In the present lawsuit, L & L seeks declarations that neither of the defendants is entitled to recover from L & L any sums due Cummins South; that Cummins South's sole recourse is against Mayer as to sums that may be due Cummins South from Mayer and that Cummins South has no recourse against L & L or any bond posted by L & L; that if L & L is indebted to Cummins South or Cummins South has any rights under the bond posted by L & L, L & L is entitled to judgment against Mayer, not dischargeable under 11 U.S.C. § 523, for the amount due Cummins South plus costs and attorney's fees; and that if L & L is indebted to Cummins South or Cummins South has any rights under the bond posted by L & L, L & L should be authorized to pay Cummins South directly any sums L & L owes Mayer.

L & L represents, and Cummins South does not here dispute, that after these lawsuits were filed, in an attempt to settle them, L & L made a payment of $49,355 that it owed Mayer to Cummins South in partial payment for the diesel generator and automatic transfer switch. Furthermore, Mayer made some payments to Cummins South pursuant to a Stipulation and Agreement filed in this case, before ultimately defaulting. Upon Mayer's default on the settlement payments, Cummins South obtained a judgment against Mayer in its own state-court action for more than $116,000, which is the sum that Cummins South contends is still outstanding for payment—exclusive of interest—on the equipment it supplied Mayer for the Winnebago casino project. Mayer has made no payments toward satisfying the state-court judgment. Cummins South therefore claims the outstanding sum against L & L's surety bond.

Hours apart on February 3, 1999, Cummins South and L & L filed cross-motions for summary judgment in this action. In its motion for summary judgment, the first on the docket, Cummins South argues that Georgia law is applicable to this case. Turning to substantive questions, Cummins South argues that the undisputed record evidence proves that United Fire and L & L agreed and intended for Cummins South to be afforded coverage under the surety bond, and thus United Fire waived provisions of the bond that would otherwise limit coverage, leaving L & L (as principal on the bond from United Fire) liable for sums not paid by Mayer. Cummins South specifically contends that its claim against the surety bond is not barred by execution of the mechanic's lien waiver it provided on January 15, 1997, for a variety of reasons, not least of which are that Cummins South had never actually been paid, and that the unambiguous language of the lien waiver is not conditioned on payment. Thus, Cummins South argues that it is not estopped by execution of the lien waiver to assert its claim against the surety bond, nor has it waived that claim, because it never represented that it had been paid or concealed that it hadn't been, or voluntarily relinquished its rights against the bond, when it had no idea that L & L would interpret the lien waiver as a representation that Cummins South had been paid. Rather, Cummins South argues that United Fire and L & L waived their defenses to payment under the bond, because they expressly extended coverage of the bond to Cummins South.

L & L's motion raises many of the same issues, but of course, from the opposing perspective. Contrary to Cummins South's assertions, L & L contends that Iowa law is applicable to the present dispute, not least because the lien waiver states that it is subject to Iowa law. L & L next contends that Cummins South's claims to payment are barred by estoppel, because Cummins South's provision of a

lien waiver was a representation that Cummins South had been paid, upon which L & L relied by not stopping payment on its check to Mayer. Similarly, L & L contends that Cummins South waived its claim by executing the lien waiver, because under the custom, practice, and usage of the construction industry, execution and delivery of a mechanic's lien waiver constitutes an acknowledgment of receipt of payment. L & L points out that it has already paid in full for the equipment Cummins South supplied, and it would be unjust to require it to pay twice.

The court heard oral arguments on the cross-motions for summary judgment on March 29, 1999. Plaintiff L & L was represented by Maurice B. Nieland of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser in Sioux City, Iowa, who argued the motions, and by George F. Madsen of Marks, Madsen & Hirschbach, also of Sioux City, Iowa. Defendant Cummins South was represented by Christopher L. Bruns of Elderkin & Pirnie, P.L.C., in Cedar Rapids, Iowa, who argued the motions, and by Jay Frank Castle of Holt, Ney, Zatcoff & Wasserman, LLP, of Atlanta, Georgia. Defendant Mayer did not appear for the oral arguments. Following the oral arguments, the court received from the parties supplemental deposition transcripts and citations to pertinent portions of those transcripts.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R.CIV.P. 56 in a number of recent decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812,

817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Ra-*

*dio Corp.*, 475 U.S.574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394. With these standards in mind, the court turns to consideration of the parties' cross-motions for summary judgment.

### B. Which State's Law Applies?

Cummins South asserts, and L & L disputes, that Georgia law should be applied to the present diversity action. This court has previously considered the often knotty problem of what law applies to specific common-law claims in a diversity action. *See Jones Distrib. Co., Inc. v. White Consol. Indus., Inc.*, 943 F.Supp. 1445, 1458 (N.D.Iowa 1996); *Harlan Feeders, Inc. v. Grand Labs., Inc.*, 881 F.Supp. 1400 (N.D.Iowa 1995); *Curtis 1000, Inc. v. Youngblade*, 878 F.Supp. 1224, 1251–54 (N.D.Iowa 1995). These and other precedents suggest the following principles for answering choice-of-law questions.

In a diversity action, a federal district court must apply the substantive law of the state in which it sits, including its conflict-of-laws or choice-of-law rules. *See id.; Harlan Feeders, Inc.*, 881 F.Supp. at 1403–04 (citing, *inter alia, Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); *accord National Continental Ins. Co. v. Empire Fire & Marine Ins. Co.*, 157 F.3d 610, 612 n. 4 (8th Cir.1998) ("In diversity cases, the forum state's choice of law rules govern," citing *Klaxon Co.*, 313 U.S. at 496, 61 S.Ct. 1020); *Colonial Ins. Co. of Cal. v. Spirco Envtl., Inc.*, 137 F.3d 560, 561–62 (8th Cir.1998) (" 'Federal district courts must apply the choice-of-law rules of the state in which they sit when jurisdiction is based on diversity of citizenship,' " quoting *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir.1991)); *Penney v. Praxair, Inc.*, 116 F.3d 330, 333 n. 4 (8th Cir.1997) ("Sitting in diversity, a district court is bound to apply the choice of law rules of the state in which it sits. . . ."). Thus, Iowa conflict-of-laws or choice-of-law rules apply here.

Ordinarily, before any choice of law need be made, there must be a "true conflict" between the laws of the possible jurisdictions on the pertinent issue. *See Harlan Feeders*, 881 F.Supp. at 1404 (citing, *inter alia, Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir.1995)). However, as a practical matter, the court deems it appropriate to assume such a "true conflict" exists, because the parties dispute which state's law applies, and leaving the question unresolved would require the court to present parallel citations of the law of two states to show accord or differences. *See, e.g., Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1387 (7th Cir.1994) (the court must still determine applicable law under choice-of-law rules even if no "true conflict" exists).

### 1. The appropriate test

The first step in determining any choice-of-law question is to determine the proper characterization of what kind of case is involved. *Jones Distrib. Co., Inc.*, 943 F.Supp. at 1458 (also observing that the law of the forum controls this question as well); *Harlan Feeders, Inc.*, 881 F.Supp. at 1404 (same). Although Iowa applies the "most significant relationship test" to conflict-of-laws or choice-of-law questions involving either contract or tort claims, the factors the court is to consider are not identical in the context of torts and contracts. *Harlan Feeders, Inc.*, 881 F.Supp. at 1405. The characterization is easily made in this case, because what is at issue is L & L's liability on the surety bond, a contractual issue, as well as the effect of a mechanic's lien waiver, also a contractual issue. Even the underlying

transaction, Cummins South's provision of equipment to Mayer, was pursuant to a contract and alleged non-payment gives rise to contract claims.

■ Iowa courts have adopted the "most significant relationship" test of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 for determination of conflict-of-laws questions pertaining to a contract claim. *Id.* at 1410. That test applies both to situations in which the parties *have not* made a choice of law in the contract, and as part of the analysis of the conflict-of-law question when the parties *have* made a choice of law in the contract. *Id.*

■ Under the test of § 188, the court considers various contacts, including the place of contracting; the place of negotiation of the contract; the place of performance; the locale of the subject matter of the contract; the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* at 1411. These factors are to be considered in applying the principles articulated in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6. SEE RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188; *Harlan Feeders, Inc.*, 881 F.Supp. at 1411. These § 6 principles require consideration of any statutory directive, or in the absence of any statutory directive, the following factors: the needs of the interstate and international systems; the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied. *Harlan Feeders, Inc.*, 881 F.Supp. at 1411. If the contract contains an effective choice-of-law clause, the factors stated in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 would also be applicable. *See id.*

L & L asserts that the parties made an effective choice of Iowa law in the only contract actually running between them, the lien waiver. However, the court finds that any choice of law in the lien waiver is at best implied: What the lien waiver expressly states is that the signatory waives all rights "given to me/us under the provisions of the statutes and laws of the State of Iowa, relating to mechanic's liens...." Waiver of Mechanic's Lien, Cummins South, Inc.'s Appendix of Evidentiary Materials, Tab 2, Affidavit of Susan Stephens, Exhibit S-4. The lien waiver thus purports to waive rights given under Iowa law, but does not expressly state that the waiver is itself controlled by or to be interpreted according to Iowa law, which would be more typical language for an express "choice-of-law" clause.[1] Therefore, in the absence of any effective choice of law here, the pertinent factors are those stated in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 and § 6, not § 187. *See Harlan Feeders, Inc.*, 881 F.Supp. at 1410–11.

### 2. Application of the test

■ Having considered all of the pertinent factors under RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 and § 6, the court concludes that Iowa law is applicable to the contract disputes between the parties, both as to the question of Cummins South's coverage under the surety bond, and as to the effect of the lien waiver. The § 188 factors weighing persuasively in favor of concluding that Iowa has the most significant relationship to the present disputes include the fact that Iowa was the place of contracting for the surety bond (although not for the lien waiver, which was executed by Cummins South in Georgia at the behest of L & L in Iowa and Mayer in Georgia); Iowa is the place of negotiation of both the surety bond and

1. Although Cummins South also claims to be covered by the surety bond, there is no choice of law clause in that document. *See* Performance and Payment Bond, Cummins South, Inc.'s Appendix of Evidentiary Materials, Tab 4, Exhibit K–8 (hereinafter "Performance and Payment Bond").

the lien waiver;[2] the place of performance of the bond was clearly Iowa, and the lien waiver waives rights the holder might otherwise have had on property in Iowa; the locale of the subject matter of the bond is the construction project in Iowa, and that of the lien waiver is a mechanic's lien on property in Iowa.

Two further factors stated in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 also weigh particularly strongly in favor of application of Iowa law. The first factor is that of justified expectations, which would be served by applying Iowa law when the underlying subject matter of the bond is a building project in Iowa, and the underlying subject matter of the lien waiver is a lien on Iowa property. Cummins South could not reasonably have expected, in the circumstances, that Georgia law would apply to its "coverage" under the Performance and Payment Bond for providing equipment to be incorporated into a construction project in Iowa or to its waiver of lien rights that might otherwise be granted under Iowa law. The second § 6 factor of particular weight here is the relative interests of the states in the determination of the particular issue: Georgia may have some interest in the rights of a materialman resident there, but Iowa's interest is greater, because the particular issues in question involve rights under a performance and payment bond for a construction project and lien rights regarding property in Iowa.[3]

No other § 188 or § 6 factor weighs to any particular degree to the contrary. Thus, Iowa law is applicable to the disputes presented here.

## C. Cummins South's Coverage Under The Surety Bond

Having settled the question of which state's law is applicable to the parties' disputes, the court turns to those disputes themselves. In its motion for summary judgment, Cummins South first asserts that it is entitled to seek recovery against the surety bond, because the undisputed record evidence proves that both United Fire and L & L intended for Cummins South to be afforded protection under the surety bond.

In its ruling on Cummins South's motion to dismiss, this court noted, *inter alia*, that the Performance and Payment Bond clearly identifies L & L—and only L & L—as the principal and does not, by its plain terms, purport to bond the performance of any other entity. Memorandum Opinion And Order Regarding Cummins South's Motion To Dismiss Or Stay Proceedings, p. 9. Furthermore, the court noted that the bond provides only that "all persons who have supplied labor or material *directly* to the Principal for use in the prosecution of the work under said contract shall have a direct right of action under this bond," Performance and Payment Bond (emphasis added), but Cummins South only supplied equipment to Mayer. *Id.* at 10. This court therefore expressed "considerable doubt" that Cummins South has any right of action against the bond. *Id.* Although Cummins South asserted at that stage of the proceedings—as it does now—that it was specifically assured that it would be protected by the Performance and Payment Bond when it agreed to provide the diesel generator and automatic switch to Mayer without advance payment, Cummins South could not say at that time who had made the assurance upon which it purportedly relied. *Id.*

However, Cummins South now points to a letter dated September 20, 1996, from

---

2. That is, the request for a lien waiver emanated from Iowa, and the form used was an Iowa form, although Cummins South executed the waiver in Georgia.

3. If there were no effective choice-of-law clause in the contract for the sale of the generator between Mayer and Cummins South, admittedly there would be a greater likelihood that Georgia law applied to a dispute between those parties over payment under that contract. However, that dispute is not presently before the court.

Robert L. Kollsmith, a Fidelity and Surety Claim Representative with United Fire, to Susan Stephens, Cummins South's Controller, concerning L & L's surety bond for the Winnebago Tribe's casino construction project. The body of the letter states, in its entirety, the following:

Please allow this letter to serve as documentation the [sic] Cummins South, Inc. has coverage under the above mentioned bond for the generator supplied to Mayer and Associated Services, a subcontractor to L & L Builders Co., on the above listed project. However, it should be understood the Surety does not waive any other rights under the bond.

Cummins South, Inc.'s Appendix of Evidentiary Materials, Tab 2, unmarked Exhibit to Affidavit of Susan Stephens. Cummins South also points to deposition testimony of Mr. Kollsmith and Ms. Stephens concerning Cummins South's request for assurances of coverage under the surety bond, which indicates that Mr. Kollsmith was acting on instructions from Mr. Larry Book, the President of L & L. Mr. Book also testified in deposition that he approved the text of the letter before it was sent to Cummins South. He testified further that he "authorized," but did not "direct," the sending of the letter.

L & L has not attempted to establish genuine issues of material fact as to whether Kollsmith was authorized by Larry Book to make the amendment to the surety bond. Rather, as its first line of resistance, L & L suggests that even if this brief letter memorializes a modification or amendment of the surety contract to give Cummins South a right to proceed under the bond, the bond itself still contains the limitations recognized by this court: By its terms, it only provides coverage to persons supplying labor or material "directly to the principal," which is still L & L, and the bond is extinguished if L & L in fact makes payment to all persons supplying labor or material "to the Principal." Although Cummins South contends these limitations must be "read out" of the con-

tract, L & L contends that it is undisputed that it paid all persons supplying labor and material *directly* to it, including making full payment to Mayer for the equipment supplied by Cummins South, and L & L never had any contract, understanding, purchase order, invoice, or any other legal obligation to pay Cummins South. L & L also argues that Cummins South has already taken a judgment against the proper "principal" as to it, which is Mayer. At oral arguments, L & L asserted that there was no consideration for any amendment or modification of the bond to include "coverage" of Cummins South, because Cummins South had already signed its contract with Mayer to deliver the generator when it started asking about coverage under the bond.

### 1. Rules of contract construction and interpretation

In a recent decision, this court summarized the Iowa rules of contract construction and interpretation as follows:

Iowa applies familiar rules of construction and interpretation to contracts. In construing a written contract, the intent of the parties controls. *Kerndt v. Rolling Hills Nat'l Bank,* 558 N.W.2d 410, 416 (Iowa 1997); *see also Howard v. Schildberg Constr. Co., Inc.,* 528 N.W.2d 550, 554 (Iowa 1995) ("Our goal in interpreting [a contract] is to ascertain the meaning and intention of the parties," citing *Power Eng'g & Mfg., Ltd. v. Krug Int'l,* 501 N.W.2d 490, 493 (Iowa 1993)); *Kuehl v. Freeman Bros. Agency, Inc.,* 521 N.W.2d 714, 719 (Iowa 1994) ("In the construction of contracts, the cardinal principle is that the intent of the parties must control."); *Lange v. Lange,* 520 N.W.2d 113, 119 (Iowa 1994) ("Under the cardinal rule of contract construction, the parties' intent controls."). Except in cases of ambiguity, the parties' intent is determined by what the contract itself says. *Id.* (citing *Iowa R.App.P.* 14(f)(14)); *Howard,* 528 N.W.2d at 554; *Kuehl,* 521 N.W.2d at

719; *Lange,* 520 N.W.2d at 119. "Consequently, where the intent of the parties is expressed in clear and unambiguous language, we enforce the contract as written." *Howard,* 528 N.W.2d at 554; *accord Lange,* 520 N.W.2d at 117 ("When a contract is not ambiguous, we are obliged to enforce it as written."); *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents,* 471 N.W.2d 859, 863 (Iowa 1991).

However, ambiguities in a contract are strictly construed against the drafter of the contract. *Kerndt,* 558 N.W.2d at 416; *Iowa Fuel & Minerals, Inc.,* 471 N.W.2d at 862–63. A contract term is ambiguous if, after application of rules of interpretation to the face of the instrument, a genuine uncertainty exists as to which of two reasonable constructions is proper. *See Jensen v. Jefferson County Mut. Ins. Ass'n,* 510 N.W.2d 870, 871 (Iowa 1994) (quoting *Connie's Constr. Co., Inc. v. Fireman's Fund Ins. Co.,* 227 N.W.2d 207, 210 (Iowa 1975)); *Motor Club of Iowa Ins. Co. v. Iowa Mut. Ins. Co.,* 508 N.W.2d 634, 636 (Iowa 1993); *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.,* 475 N.W.2d 607, 619 (Iowa 1991); *Iowa Fuel & Minerals v. Board of Regents,* 471 N.W.2d 859, 863 (Iowa 1991); *West Trucking Line, Inc. v. Northland Ins. Co.,* 459 N.W.2d 262, 263 (Iowa 1990); *Service Unlimited v. Elder,* 542 N.W.2d 855, 857 (Iowa Ct.App.1995); *Nepstad Custom Homes Co. v. Krull,* 527 N.W.2d 402, 405 (Iowa Ct.App.1994) (citing *Iowa Fuel & Minerals* ). Thus, the test for ambiguity is an objective one: "Is the language fairly susceptible to two interpretations?" *Met–Coil Sys. Corp. v. Columbia Casualty Co.,* 524 N.W.2d 650, 658 (Iowa 1994); *Cincinnati Ins. Co. v. Hopkins Sporting Goods, Inc.,* 522 N.W.2d 837, 839 (Iowa 1994); *Gracey v. Heritage Mut. Ins. Co.,* 518 N.W.2d 372, 373 (Iowa 1994); *Iowa Fuel & Minerals, Inc.,* 471 N.W.2d at 863; *Krull,* 527 N.W.2d at 405.

When interpreting a contract, the court seeks to give effect to the language of the entire agreement in accordance with its commonly accepted and ordinary meaning. *Lewis Central Educ. Ass'n v. Lewis Central Community Sch. Dist.,* 559 N.W.2d 19, 22 (Iowa 1997) (citing *Home Fed. Sav. & Loan Ass'n v. Campney,* 357 N.W.2d 613, 617 (Iowa 1984)); *Farmers & Merchants Sav. Bank v. Vandenberg Chevrolet–Buick, Ltd.,* 523 N.W.2d 211, 213 (Iowa 1994); *Lange,* 520 N.W.2d at 119. Thus, an interpretation that gives a reasonable meaning to all terms is preferred to one that renders a term superfluous or of no effect. *Kerndt,* 558 N.W.2d at 416; *Iowa Fuel & Minerals, Inc.,* 471 N.W.2d at 863. The context in which an agreement is made may influence interpretation when appropriate. *Lewis Central Educ. Ass'n,* 559 N.W.2d at 22 (citing *Campney,* 357 N.W.2d at 617; *Setterberg v. Sheaffer Eaton, Inc.,* 473 N.W.2d 217, 220 (Iowa Ct.App.1991)). This is so, because a court should not give a contract a meaning that the parties did not in fact intend. *Lange,* 520 N.W.2d at 119.

*Prudential Ins. Co. of Am. v. Rand & Reed Powers Partnership,* 972 F.Supp. 1194, 1203–04 (N.D.Iowa 1997); *accord Petty v. Faith Bible Christian Outreach Ctr., Inc.,* 584 N.W.2d 303, 306 (Iowa 1998) ("Our goal in interpreting a [contract] is to ascertain the meaning and intention of the parties. *Howard v. Schildberg Constr. Co.,* 528 N.W.2d 550, 554 (Iowa 1995). Unless the contract is ambiguous, the court determines the parties' intent from the language of the contract. *Id.* Consequently, where the intent of the parties is expressed in clear and unambiguous language, we enforce the contract as written. *Id.*").

The Iowa Supreme Court has articulated comparable principles when interpretation of a construction surety bond was at issue. *See Bourrett v. W.M. Bride Constr. Co.,* 248 Iowa 1080, 1084, 84 N.W.2d 4, 6

(1957) ("[T]he intention of the parties to a contractor's bond is the controlling factor in determining the right of laborers and materialmen to recover thereon."). More specifically, the Iowa Supreme Court has explained as follows:

> It is now almost universally held that the undertaking of a paid surety engaged in that business for profit is in the nature of an insurance contract and is controlled by rules applicable thereto rather than by rules applied to a gratuitous surety who was a favorite of the law. *Rowe v. Stufflebeam,* 249 Iowa 985, 992, 89 N.W.2d 875, 878–879, and citations; 9 AM.JUR., *Building and Construction Contracts,* section 89; 72 C.J.S. *Principal and Surety* § 102.
>
> '*** in determining the right of a laborer or materialman to the benefit of a contractor's bond, as against a compensated surety, the undertaking will be most strongly construed in favor of such persons and against the surety. That is to say, where the bond is reasonably susceptible of two constructions, that one which is the more favorable to the claimant will be adopted.' Anno. 77 A.L.R. 21, 42–43, citing numerous precedents; supplemented in 118 A.L.R. 57, 62. To like effect are *Clinton Bridge Works v. Kingsley,* 188 Iowa 218, 224, 175 N.W. 976; *Streator Clay Mfg. Co. v. Henning–Vineyard Co.,* 176 Iowa 297, 311, 155 N.W. 1001.

*Westinghouse Elec. Corp. v. Mill & Elevator Co.,* 254 Iowa 874, 877–78, 118 N.W.2d 528, 530 (1962).

### 2. *Ambiguity*

Although L & L has not challenged Cummins South's contention that the letter of September 20, 1996, from Kollsmith to Stephens memorializes an amendment to the surety bond, the parties clearly disagree on precisely what that amendment provided. The amendment speaks in terms of Cummins South's "coverage" under the surety bond, but the bond itself nowhere speaks in terms of "coverage."

Cummins South seems to take its "coverage" under the bond to mean that L & L guaranteed Cummins South would be paid for the equipment it supplied to Mayer. Thus, because Cummins South has not been paid, it contends it is entitled to payment under the bond. L & L appears to contend that the reservation of rights in the letter means that its obligation under the bond was extinguished when it made all payments to persons who supplied labor or materials *directly* to L & L, such as Mayer, but the amendment did not extend L & L's obligation to pay Cummins South if L & L had already paid Mayer.

■ After applying the rules of interpretation to the face of the amendment and the bond, the court concludes that the amendment is ambiguous, because a genuine uncertainty exists as to which of two reasonable constructions is proper. *Rand & Reed Powers Partnership,* 972 F.Supp. at 1204. One such reasonable construction is as follows: Recognizing that the surety bond otherwise protects persons who have directly supplied labor or material to the principal, L & L, and the undertakings of the bond are extinguished if L & L promptly pays all such persons, it is reasonable to conclude that if Cummins South has "coverage" under the bond, it was also guaranteed payment from L & L, even though it only indirectly supplied material to L & L, and the bond was not extinguished as to Cummins South if Cummins South never received payment. Such "coverage" would be nugatory if Cummins South did not also obtain a direct right of action under the bond, just like the direct right of action given those persons "who have supplied labor or material directly to the Principal" under the terms of the original bond. The other "rights" reserved by the amendment, under this interpretation, would be the right to assert defenses, such as estoppel, waiver, and non-performance by a claimant.

However, it is perhaps just as reasonable to read Cummins South's "coverage" to mean that L & L promised to make

timely payment to *Mayer* for any equipment supplied by Cummins South, so that Cummins South did not need to fear that default by the principal would prevent it from being paid by the subcontractor. However, under this reading, L & L did not undertake to make "double payment" to a materialman if it had already paid the subcontractor and the subcontractor failed to pay the materialman. Under this interpretation, Cummins South obtained a direct right of action under the bond if L & L did not pay Mayer, but the bond would be extinguished, as to Cummins South, if L & L actually made payment to Mayer.[4]

■ In light of such an ambiguity, the court must construe Cummins South's "coverage" most strongly in favor of Cummins South and against the surety; that is, the court must adopt the interpretation of Cummins South's "coverage" that is the more favorable to Cummins South. *See Westinghouse Elec. Corp.*, 254 Iowa at 877–78, 118 N.W.2d at 530. This conclusion is also in keeping with the general rule that ambiguities in a contract are strictly construed against the drafter of the contract, in this case, the surety United Fire, which drafted both the original bond and the letter memorializing the "amendment." *Rand & Reed Powers Partnership*, 972 F.Supp. at 1204. Therefore, the court concludes that the "coverage" Cummins South obtained from the amendment of the bond was the right to be treated by L & L as though it had provided material directly to L & L, thereby obtaining the surety's and L & L's guarantee of payment, and a direct right of action against the bond if it had not been paid.

### 3. Consideration

L & L next argues that even if the amendment of the bond purported to obligate L & L to guarantee Cummins South would be paid for providing the generator to Mayer and purported to give Cummins South a direct right of action against the bond, there was no consideration for such an amendment. L & L argues that it can't be consideration for Cummins South to agree to deliver equipment to a third party, in this case Mayer, when Cummins South had already bound itself to Mayer to deliver that equipment. Cummins South, however, argues that it was not required to provide consideration for the amendment, because it was not a party to the amendment.

■ Cummins South is correct that the bond—and any amendment to the bond to provide "coverage" to Cummins South—is actually between L & L and United Fire, as principal and surety, respectively, not between L & L and Cummins South, or between United Fire and Cummins South.[5] Thus, there must be consideration on the part of United Fire and L & L, but not on the part of Cummins South. United Fire plainly agreed to provide "coverage" to Cummins South. There is a genuine issues of material fact, however, as to whether L & L promised in exchange to indemnify United Fire for any claim made against the bond by Cummins South. The genuine issue of material fact as to L & L's consideration for the amendment arises from differences in the deposition testimony of Mr. Larry Book, President of L & L, and Mr. Kollsmith, a representative of United Fire. Mr. Kollsmith testified that "L & L provided in advance that they were going to indemnify [United Fire] for

---

4. It is not plausible that the "amendment" somehow added Mayer as an additional "principal" with an obligation to indemnify United Fire if Mayer failed to pay a materialman. L & L and United Fire would lack the authority to so bind Mayer.

5. Cummins South stands as a third-party beneficiary of the suretyship contract. *See Fire-* *man's Fund Ins. Co. v. United States,* 909 F.2d 495, 499 n. * (Fed.Cir.1990) (identifying subcontractors and suppliers as "third-party beneficiaries" of a payment bond, which is a contract between the contractor and surety that ensures that subcontractors and suppliers will be paid if the contractor defaults).

the bond.... It took away the uncertainty of if Cummins South filed a claim against the bond that they would indemnify." Deposition of Robert Kollsmith, Cummins South, Inc.'s Appendix of Evidentiary Materials, Tab 3, pp. 11–12. In the deposition of Mr. Book, however, the following exchange occurred:

> Q. (By Mr. Castle) Okay. In exchange for this agreement to extend coverage to Cummins, isn't it true that L & L agreed to indemnify or to exonerate or to reimburse or whatever you want to call it, the surety if a claim was in fact made under the bond?
>
> [Objection by opposing counsel.]
>
> A. That never came up.

Deposition of Larry Book, Supplemental Exhibit, p. 103.

Therefore, the court concludes as a matter of law that under the amendment to the surety bond, the "coverage" Cummins South obtained was the right to be treated by L & L as though it had provided material directly to L & L, thereby obtaining the surety's and L & L's guarantee of payment, and a direct right of action against the bond if it had not been paid. However, there are genuine issues of material fact as to whether that amendment ever became effective, because there are genuine issues of material fact as to whether the amendment was supported by consideration on L & L's part.

L & L also asserts that, any amendment to provide Cummins South with "coverage" under the bond notwithstanding, Cummins South is estopped from seeking or has waived such coverage. The court therefore turns to L & L's estoppel and waiver arguments in the next two sections.

### D. Estoppel

L & L contends that Cummins South is estopped to assert a claim for payment under the bond, because Cummins South represented to L & L that it had already been paid when it executed a waiver of its mechanic's lien, and L & L relied on that representation by not stopping payment on its check to Mayer. Cummins South argues that its claim against the bond is not estopped, because it made no false representations and concealed no material facts by executing the mechanic's lien waiver; no jury could find that L & L was ignorant of the true facts; and Cummins South had no inkling that L & L would interpret a mechanic's lien waiver as a representation that it had been paid. Thus, Cummins South contends, there is no evidence of intent to deceive.

#### 1. Elements of equitable estoppel

Equitable estoppel can be asserted as a bar to relief to a party seeking to recover on a breach of contract. See, e.g., Utica Mut. Ins. Co. v. Stockdale Agency, 892 F.Supp. 1179, 1192 n. 7 (N.D.Iowa 1995). As this court explained in Utica Mutual, " 'Equitable estoppel is a doctrine invoked to avoid injustice.' " Id. (quoting Hawkeye Land Co. v. Iowa Power & Light, 497 N.W.2d 480, 486 (Iowa Ct.App.1993), in turn citing Bricker v. Maytag Co., 450 N.W.2d 839, 841 (Iowa 1990)); accord In re Marriage of Gallagher, 539 N.W.2d 479, 482 (Iowa 1995) ("Equitable estoppel is a doctrine based on fair dealing, good faith, and justice."). The elements of equitable estoppel are the following: (1) a false representation or concealment of material facts by the party against whom estoppel is asserted, here Cummins South; (2) a lack of knowledge of the true facts on the part of the actor, here L & L; (3) the intention on the part of Cummins South that the false representation or concealment be acted upon; and (4) reliance upon the representation of Cummins South by L & L to L & L's prejudice and injury. Id. (citing Hawkeye Land Co., 497 N.W.2d at 486); accord In re Marriage of Gallagher, 539 N.W.2d at 482; Morgan v. American Family Mut. Ins. Co., 534 N.W.2d 92, 100 (Iowa 1995); Bowles v. Schilling, 581 N.W.2d 192, 194 (Iowa Ct.App.1998); City of Marshalltown v. Reyerson, 535 N.W.2d

135, 137 (Iowa Ct.App.1995) (describing the above as the elements of the affirmative defense of equitable estoppel). The court finds that genuine issues of material fact on the elements of this defense to L & L's liability to Cummins South on the surety bond preclude summary judgment here.

## 2. Genuine issues of material fact

The court acknowledges that the waiver of mechanic's lien upon which L & L's estoppel defense depends says nothing whatever about being given in consideration of having been paid—indeed, to the contrary, it states that it is given in consideration of Cummins South's "employment" to provide materials—and the lien waiver is silent as to any waiver of rights under the surety bond. On the other hand, the waiver of mechanic's lien is also silent as to any reservation by Cummins South of a right to be paid. L & L asserts that it is the custom, practice, and usage of the construction industry in Iowa that execution of a waiver of mechanic's lien is a representation by the executing party that it has been paid. Cummins South has strenuously asserted that this evidence of custom and practice is inadmissible parol evidence when the terms of the waiver of mechanic's lien are unambiguous and the waiver does not contain any express representation that payment has been received or any express waiver of rights to proceed against the Performance and Payment Bond.

Cummins South mistakes the issue: What Cummins South describes as "parol evidence" is not being used to establish that the terms of the mechanic's lien waiver included a waiver of rights against the surety bond, although proffer of "parol evidence" for that purpose would be an improper attempt to establish additional, inconsistent terms of the bond. *See, e.g.,* IOWA CODE § 554.2202. L & L is not seeking to *enforce* the lien waiver as an agreement including a waiver of Cummins South's rights as against the bond. Rath-

er, the proffered evidence of custom, practice, and usage is offered to establish elements of L & L's defense of equitable estoppel to Cummins South's contract claim against the surety bond; that is, it is offered to show that the mechanic's lien waiver was reasonably taken by L & L, and intended by Cummins South, to be a representation that Cummins South had been paid.

■ The court finds that the evidence in the record, including the supplemental depositions of L & L's experts on the effect of lien waivers in the construction industry, demonstrates that there are genuine issues of material fact as to whether as a general matter lien waivers are intended and understood to be a representation that the executing subcontractor or materialman has been paid. *See* FED. R.CIV.P. 56(c) (summary judgment may only be granted where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."). Cummins South is correct that the deposition testimony of the experts is far more equivocal than their affidavits on the question of whether such a general understanding exists, because all of the experts acknowledged that lien waiver and payment practice varies from state to state, contractor to contractor, owner to contractor, contractor to subcontractor or materialman, and even job to job. However, granting L & L, as the party resisting Cummins South's motion for summary judgment on this question, all reasonable inferences from the evidence, *see Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348 (a court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts); *Quick,* 90 F.3d at 1377 (same), the experts' testimony does demonstrate that it would be reasonable, at least under some circumstances, for L & L to have interpreted a lien waiver as a

representation that Cummins South had been paid. It is for the jury to decide whether circumstances making such an interpretation reasonable actually existed in this case.

Perhaps more importantly, the court finds the record evidence demonstrates that there are genuine issues of material fact as to whether, in the circumstances presented, L & L understood, and Cummins South intended, that Cummins South's waiver of mechanic's lien was a representation that Cummins South had been paid, when Cummins South in fact had not been paid. *See Utica Mut. Ins. Co.*, 892 F.Supp. at 1192 n. 7 (first and third elements of equitable estoppel defense). The record suggests that, to protect itself and Cummins South from Mayer's apparent financial problems, L & L was attempting to set up a simultaneous transaction wherein it made payment to Mayer that would be released only upon assurances that Cummins South had been paid, and Mayer would have in hand the funds (admittedly as yet uncleared) with which to pay Cummins South and obtain the waiver of mechanic's lien L & L required before releasing funds—or not stopping payment—on its check to Mayer. Cummins South's own statement of facts demonstrates that Cummins South knew that Mayer would not pay Cummins South unless and until Cummins South supplied the requested mechanic's lien waiver and Cummins South assumed the mechanic's lien waiver was a prerequisite to Mayer being paid by L & L, although Cummins South hastens to add it had no idea that L & L would take the mechanic's lien waiver as evidence that Cummins had been paid. *See* Cummins South's Statement of Undisputed Facts, ¶ 15. Again, granting this evidence all reasonable inferences, *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377, a reasonable jury could conclude that Cummins South understood that it was representing to the general contractor that it had been paid by a subcontractor, so that the general contractor would clear payment to the subcontractor. Furthermore, Larry Book's testimony indicates that at the time L & L provided the check to Mayer, L & L understood and intended that the lien waiver would be evidence that Mayer had paid Cummins South, so that it would feel safe releasing to Mayer funds intended to cover payment to Cummins South.

In addition, it is no unreasonable stretch from the evidence just described for a jury to conclude that Cummins South intended that its representation of payment would be acted upon, that is, that L & L would release funds to Mayer so that Mayer's payment to Cummins South would be "good." *See Utica Mut. Ins. Co.*, 892 F.Supp. at 1192 n. 7 (intent that representation be acted upon is third element of equitable estoppel). Cummins South maintains that L & L *knew*, the lien waiver notwithstanding, that Cummins South had not been paid, thus negating the second element of estoppel. *See id.* (the second element of equitable estoppel is a lack of knowledge of the true facts on the part of the actor, here L & L). However, there is a genuine issue of material fact as to this element, because Cummins South did nothing in providing the lien waiver to put L & L on notice that it had not been paid in a simultaneous transaction, and the question for the jury is whether the lien waiver itself reasonably allayed any fears L & L had that Cummins South had not yet been paid, leaving L & L in ignorance of the true facts. Certainly, L & L subsequently learned that Cummins South had not in fact been paid by Mayer, but that certainty is after the point at which any estoppel would have attached. The final element of equitable estoppel—or a genuine issue of material fact as to that element—reliance upon the representation by L & L, *id.*, is also apparent from the record, in that L & L specifically acted upon the lien waiver by not stopping payment on its check to Mayer, and it has been injured by nonetheless being subject-

ed to a claim for payment against the surety bond.

Thus, the court concludes that both Cummins South's and L & L's motions for summary judgment on L & L's equitable estoppel defense must be denied.

### E. Waiver

Finally, the parties each seek summary judgment on the question of whether Cummins South waived a right to payment by executing the mechanic's lien waiver. Cummins South contends that it never voluntarily waived its right to proceed against the surety bond by executing a waiver of mechanic's lien, and points out that the waiver of mechanic's lien contains no express waiver of Cummins South's right to proceed against the bond. L & L, however, does not contend that the mechanic's lien waiver contained an express waiver of the right to proceed against the surety bond as well as the express waiver of the right to file a mechanic's lien. Rather, L & L again asserts that it is the custom and practice of the industry that executing a waiver of mechanic's lien waives a right to payment.

Iowa courts have explained the law of waiver of contractual rights as follows:

This court has long held that contract rights can be waived. *See Dunn v. General Equities of Iowa, Ltd.*, 319 N.W.2d 515, 516 (Iowa 1982). Waiver is the voluntary or intentional relinquishment of a known right. It can be express or implied. The essential elements are the existence of a right, actual or constructive knowledge of it, and an intention to give it up. *Scheetz v. IMT Insurance Co.*, 324 N.W.2d 302, 304 (Iowa 1982). No consideration is required. *Smith v. Coutant*, 232 Iowa 887, 894, 6 N.W.2d 421, 425–26 (1942). Nor is prejudice necessary. *Id.*

*In re Guardianship of Collins*, 327 N.W.2d 230, 233–34 (Iowa 1982); *accord Folkers v. Britt*, 457 N.W.2d 578, 581 (Iowa 1990) (quoting Collins); *Quigley v. Wilson*, 474 N.W.2d 277, 280 (Iowa App.1991) (quoting

*Collins*). The court concludes these same principles are applicable to the question of whether a third party has waived a right of action against a surety bond. The court notes further that, while estoppel requires consideration of the understanding of both parties, the one making a representation and the one relying upon it, as to the meaning of the representation, waiver is viewed only from one perspective: that of the waiving party.

One difference between the positions of the parties at first blush appears to be merely semantic: Cummins South asserts there is no evidence that it voluntarily waived its right to proceed against the bond, but L & L characterizes the issue as whether Cummins South waived a right to *payment*. The difference is more than semantics, however, because a lack of evidence that one voluntarily and intentionally waived specific rights under the surety bond would not necessarily defeat a waiver claim founded on voluntary and intentional waiver of the broader right to receive *payment*, which would necessarily preclude a right to proceed against a surety bond for payment.

■■■ Cummins South has presented evidence that would suggest that, at the time Cummins South waived its mechanic's lien, it did so with the specific belief that it still had rights under the surety bond to which it could look instead. However, this evidence does no more than generate a genuine issue of material fact; it does not demonstrate beyond cavil that Cummins South had not voluntarily and intentionally waived its broader right to *payment*. This is so, because a reasonable jury could determine from the record evidence recounted in reference to the estoppel defense that giving a mechanic's lien waiver is a waiver not only of the rights specified in the lien waiver itself, but by implication, at least in the circumstances presented here, a waiver of any right to payment. *In re Guardianship of Collins*, 327 N.W.2d at 233–34 (waiver "can be express or im-

plied"). Thus, some of the same evidence that could justify L & L's reliance on the mechanic's lien waiver as a representation of payment for the estoppel defense could, by implication, suggest that it was Cummins South's *intention* to waive a right to payment, recognizing that under Iowa law, one can be presumed to intend the natural consequences of an act intentionally done. *See, e.g., Estate of Tedrow v. Standard Life Ins. Co. of Indiana*, 558 N.W.2d 195, 197 (Iowa 1997) (citing *Lukecart v. Swift & Co.*, 256 Iowa 1268, 1283, 130 N.W.2d 716, 724 (1964), for the proposition that "a person is presumed to intend the natural consequences of an act intentionally done"). This genuine issue of material fact as to Cummins South's intent to waive a right to payment precludes summary judgment in favor of either party on L & L's waiver defense.

### III.  CONCLUSION

The court concludes, as an initial matter, that Iowa law applies to the present disputes between the parties. Furthermore, applying Iowa law, the court concludes that, as a matter of law, by amendment of L & L's Payment and Performance Bond, Cummins South has "coverage" under that bond, which must be construed to mean that Cummins South obtained the right to be treated by L & L as though it had provided material directly to L & L, thereby obtaining the surety's and L & L's guarantee of payment, and a direct right of action against the bond if Cummins South had not been paid. However, there are genuine issues of material fact as to whether there was consideration on both sides of the bargain for the amendment— United Fire's and L & L's—which may make the amendment ineffective, and hence preclude summary judgment in favor of either party on Cummins South's contention that it is entitled to payment under the bond.

Assuming therefore that Cummins South has protection under the bond, the court turned to the question of whether either party was entitled to summary judgment on L & L's defenses of equitable estoppel and waiver. The record reveals that jury questions are presented on each of these defenses.

Therefore, the parties' cross-motions for summary judgment are **denied**.

**IT IS SO ORDERED.**